IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2015 Session

## RENEE PEMBROKE (COOLEY) v. CHRISTOPHER EUGENE COOLEY

**Appeal from the Circuit Court for Shelby County**
**No. CT00223404     Robert Samual Weiss, Judge**

———————————————————

**No. W2015-00583-COA-R3-CV – Filed January 29, 2016**
———————————————————

This appeal concerns a post-divorce modification of alimony. During the underlying divorce proceedings, the parties executed a marital dissolution agreement providing that the husband would make payments to the wife of $8,000 per month in transitional alimony for a period of five years followed by payments of $7,500 per month in alimony *in futuro* for a period of five years. The agreement provided that the alimony *in futuro* payments could be modified by either party "upon a showing of a material, unanticipated change in circumstances." The agreement was incorporated into the trial court's final decree of divorce entered in January 2005. In April 2014, the wife filed a petition seeking to increase and extend the husband's alimony *in futuro* obligation. After a trial, the Shelby County Circuit Court found a change in circumstances warranting a modification of alimony and ordered that the husband continue to pay alimony *in futuro* of $6,200 per month beginning in January 2015 and continuing for a period of six years or until his retirement, whichever occurred later. The trial court also awarded the wife $30,000 as alimony *in solido* for attorney's fees. On appeal, we conclude that the record does not support the trial court's finding of a substantial and material change in circumstances. We therefore reverse the trial court's modification of the husband's alimony *in futuro* obligation. Additionally, we reverse the trial court's award of alimony *in solido* for attorney's fees. This matter is remanded for such further proceedings as may be necessary and are consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD P.J., W.S., and BRANDON O. GIBSON, J., joined.

Leslie Gattas Coleman and Brent A. Rose, Memphis, Tennessee, for the appellant, Christopher Eugene Cooley.

Lara E. Butler, Memphis, Tennessee, for the appellee, Renee Pembroke (Cooley).

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff/Appellee Renee Pembroke ("Wife") and Defendant/Appellant Christopher Eugene Cooley ("Husband") married in 1981. They had two children together, born in 1982 and 1987. Husband graduated from dental school in 1982 and established a successful dental practice in Shelby County over the course of the parties' marriage. As reflected on the parties' tax returns, Husband's average annual income from 2001 to 2003 was $436,055. Wife has a bachelor's degree in early childhood education and child development and a master's degree in curriculum and instruction. From 1987 to 1998, Wife earned approximately $30,000 per year primarily by working as a grant writer and adjunct faculty member at a local community college. Wife also began writing children's books during that time and developed an annual program for writing and illustrating children's books at another local college. In 1997, Wife began earning additional income by helping to organize cotillion programs in Memphis. From 2000 to 2004, Wife's income fluctuated between $6,000 and $8,000 per year and was derived solely from her children's books and her work with cotillion.

The parties were divorced on January 11, 2005 by a final decree of divorce that incorporated the parties' agreed marital dissolution agreement ("MDA") and parenting plan. Among other things, the MDA provided that Husband would retain sole interest in his dental practice and Wife would waive any and all interest in the business. At the time of the divorce, the parties jointly owned two condominiums in downtown Memphis—one on South Main Street (the "Main Street condo") and one on South Front Street (the "Front Street condo"). The MDA provided that Husband would receive the Main Street condo and assume all debts and expenses associated with it, and Wife would receive the Front Street condo and assume all debts and expenses associated with it. The MDA further provided that Wife would receive 61.5% of the funds held in Husband's retirement account—an amount later calculated to be $117,874. At the time of the divorce, $385,774 from the sale of the parties' marital residence and 2003 tax refund was held in escrow for the parties. Of that amount, the MDA provided that $50,000 be withdrawn and paid to Wife's attorney, $150,000 be set aside to pay the parties' 2004 federal income tax liability, and the remaining $185,774 be paid to Wife. With regard to alimony, the MDA provided:

> 8. <u>ALIMONY</u>. Husband shall pay to Wife, as transitional alimony, the sum of
> $8,000 per month for a period of sixty (60) months, and thereafter, Husband

- 2 -

shall pay to Wife, as alimony in futuro the sum of $7,500 per month for a period of sixty (60) months. All alimony will terminate in the event of Wife's death or remarriage; however, the transitional alimony shall not otherwise be subject to modification. The alimony in futuro may be modified by either party upon a showing of a material, unanticipated change in circumstances.

On April 7, 2014, Wife filed a petition seeking to increase the amount of Husband's alimony payments and to extend the term of the payments. In support of her petition, Wife asserted that, since the divorce, her expenses had increased while her job opportunities had been severely restricted by the 2008 economic recession. Wife stated that the real property she received through the division of the marital estate had been adversely affected by the recession and had become an economic burden. Furthermore, Wife alleged that Husband's income had increased dramatically during the same period of time, leaving him with more disposable income and making him financially capable of making extended and/or increased alimony payments. Wife's petition also sought an award of attorney's fees.

A trial was conducted in the Shelby County Circuit Court over the course of four days in January 2015. At the time of the trial, Wife was 64 years old and Husband was 60 years old. The trial court heard testimony from Wife, Husband, and several other witnesses. Sixty-six exhibits were entered into evidence, including the parties' tax returns from 2001 to 2013, bank and credit card statements, and a statement of Wife's income and expenses.

Wife testified that at the time of the parties' divorce in January 2005, she was living in Dallas, Texas with the parties' daughter in a duplex that Husband rented for them. She continued organizing cotillion programs in Memphis during that time and testified that she repeatedly applied for jobs at Southern Methodist University but was unsuccessful. Later in 2005, Wife gave up the duplex in Dallas and returned to Memphis so that the parties' daughter could finish high school. Wife purchased a house in Memphis at that time for $240,000; she used $100,000 from the funds she received in the parties' divorce to make a down payment. Wife testified that although the house was "in a state of disrepair" at the time she purchased it, she hoped to be able to fix it up enough to sell at a profit in the future. Wife admitted, however, that, in retrospect, the house "turned out not to be a wise investment." Wife testified that at the time of trial, she was spending about $500 per month on home upkeep and maintenance to repair things like rotting wood behind the kitchen sink and leaks in the roof and bathroom.

Wife acknowledged that by moving into the Front Street condo, she could have avoided the maintenance expenses associated with her house, but testified that it was "just not a suitable place for me to live." Moreover, Wife testified that the Front Street condo had decreased substantially in value since the divorce and had become an economic burden. She

testified that following the parties' divorce, the Front Street condo needed work before it could be rented and that it took her six months to get it fixed and find tenants. Wife stated that since those initial tenants moved out in 2008, she had struggled to find reliable tenants. Although the Front Street condo was rented at the time of trial, Wife testified that the amount of rental income it produced was less than the cost of the mortgage and homeowner's association fees.

Wife testified that she has struggled to find a reliable source of income since the divorce. Although she has earned approximately $10,000 per year on average from her continued work organizing cotillion programs, Wife testified that she has not been able to earn significant income through other endeavors. Wife testified that after returning to Memphis in 2005, she hoped to find grant writing work similar to what she had done during the parties' marriage but was unsuccessful due to the scarcity of available funding. In 2008, Wife returned to Dallas and rented a studio apartment while she took a landscaping course at a local college. Following her completion of the course, Wife was chosen for a one-month paid internship on a hydrangea farm in Nantucket, Massachusetts. Wife testified that since the internship, she has traveled to Nantucket on a regular basis to work at the farm and on books that she was writing. She testified that, in large part, the expenses for those trips were paid for by her work at the farm. She testified that she has published three books since the divorce, but that none of the books were profitable at the time of trial. In 2010, Wife returned to Dallas once again to take mediation courses. During that time, Wife rented another apartment in Dallas and was able to supplement her income by working as a substitute teacher and renting out her Memphis home. Wife testified that she hoped the mediation training, coupled with her counseling background, would make her a good candidate for mediation positions. Nevertheless, Wife testified that she applied for several mediation positions after completing the course and did not hear back. Wife testified that she had organized several trips to England for a small group of women interested in buying antiques. She testified that she earned a small profit from the trips but discontinued the practice after a 2011 trip that "did not go well financially." Despite her educational and work background, Wife testified that she had no desire to teach school. Regarding her future plans, Wife testified that she hoped to continue writing books and expand her work with cotillion by starting new programs.

A large portion of Wife's cross-examination testimony focused on her extensive travel since the divorce. In addition to Memphis, Dallas, and Nantucket, Wife acknowledged that she had taken trips to England, France, Italy, Alabama, Colorado, Florida, Hawaii, New Mexico, and North Carolina. Wife explained that the parties' son lives in England and that she had taken several trips there to visit him. She stated that her airfare for each trip was approximately $500 and that she had not been to England since 2012. She testified that on one such trip in 2009, she and her son traveled to Italy; on another in 2011, they traveled to

France. Wife also explained that the parties' daughter and grandson lived in Hawaii for a period of time and later moved to Colorado. She testified that she had taken several trips to visit the parties' daughter and babysit their grandson in both places. She stated that her airfare was approximately $200 to Hawaii and $100 to Colorado. Wife acknowledged that she took one other trip to Hawaii in 2011 with an acquaintance. She also acknowledged taking several short trips to Alabama, Florida, and North Carolina. In 2012, Wife took a week-long course on photographic book layout in New Mexico. With the exception of the New Mexico trip, Wife testified that she stayed with friends or family on her trips and therefore did not incur lodging expenses.

Husband's testimony focused in large part on the income derived from his continued dental practice following the parties' divorce.[1] Husband testified that at the time of the parties' divorce, he was living in the Main Street condo that he received in the parties' division of the marital assets. Shortly thereafter, however, Husband moved out of the Main Street condo when he purchased a home in Memphis for $617,000. Among other things, Husband's testimony showed that he was able to take numerous trips, purchase vehicles for himself and for the parties' daughter, and pay private school tuition for the parties' grandson while also meeting his alimony obligations and making large contributions to his retirement accounts. Additionally, in 2012, Husband purchased a condo in Florida for $380,000 where he testified that he spends one or two weekends each month and plans to make his permanent residence when he retires.

The trial court also viewed the video deposition of Dr. David Strauser.[2] Dr. Strauser is a professor and vocational consultant in the Memphis area that conducted a vocational evaluation of Wife in August 2014. In conducting his evaluation, Dr. Strauser interviewed Wife, had her complete a vocational self-assessment test, and reviewed information regarding her education and work history. Dr. Strauser testified that he thought Wife had "very interesting and . . . productive work experience" and "skills that are marketable in the labor market and that could be used at the present time and would be in demand in a variety of social service, educational contexts, even in an administrative office type context." He further testified that based on Wife's education and personality, she was capable of being an above-average employee. Dr. Strauser testified that he did not think Wife was lazy based on his interactions with her but that her primary obstacle to finding steady employment was her

---

[1] Tax returns admitted into evidence showed that Husband had a total income $583,270 in 2005, $503,575 in 2006, $599,428 in 2007, $650,067 in 2008, $599,646 in 2009, $630,045 in 2010, $543,129 in 2011, $658,948 in 2012, and $673,268 in 2013.

[2] Dr. Strauser was unavailable to testify at trial, and the parties stipulated that his video deposition would be played for the trial court.

own uncertainty about how someone her age would fit into the labor market. Dr. Strauser acknowledged that Wife's age might work to her disadvantage in the job market but stated that her maturity and stability could also work to her advantage. Dr. Strauser testified that having some degree of uncertainty about applying for jobs at 64 was not unreasonable, but that, in his opinion, Wife's inability to find steady employment was the result of her failure to conduct a structured, sustained job search. On cross-examination, Dr. Strauser acknowledged that the 2008 economic recession had a "very negative" effect on the job market as a whole but testified that individuals with little education and low-skill sets were disproportionately affected. He testified that Wife "had marketable skills during the recession, and there were jobs available that would be looking for her skills."

The trial court entered a written order on March 4, 2015. As an initial matter, the trial court made the following findings related to Wife's burden of establishing a change in circumstances sufficient to permit modification of alimony:

a. Husband had a dramatic increase in income since the entry of the Final Decree of Divorce. The testimony was that Husband's 2013 taxable income was $673,268. The last tax return prepared prior to the entry of the Final Decree of Divorce was the parties' 2003 income tax return, which reflected Husband's taxable income was $439,704. When the parties filed their 2004 taxes after the entry of the Final Decree of Divorce, Husband's taxable income had increased to $535,916. Using the parties' 2003 tax return as the base point, Husband's increase in income from 2003 to 2013 was a 53% increase, which equates to about a 5% annual increase. It is notable that Husband had an $81,000 depreciation deduction in 2013 which would have actually increased his annual income for 2013 to $754,590. . . . [T]he court finds that it was unanticipated that Husband's income would increase so dramatically;

b. The Wife's maximum income during the marriage was $33,000 in 1992 when she was working four different jobs. At the time of the divorce, her income had continued to decline in part due to Husband's increased income and the grant positions she was working expiring. At the time of the divorce, Wife was averaging approximately $500 per month in income;

c. The economic downturn in 2008 had a significant impact on Wife's employability;

d. Dr. Strausser [sic] evaluated Wife in 2014 and found that she had interesting and productive work experience, that she had certain skills that would be

desirable in the marketplace, and that she would be attractive to some employers; however, he acknowledged that her age would be a factor;

e. Dr. Strausser's [sic] finding that Wife could have an income in the range of $31,000 plus would still only be about $700 more than her stated income of $1,880 (through Cotillion, retirement and book sales) on her affidavit of income and expenses. Most of the positions that Dr. Strausser [sic] identified her as being qualified in and able to pursue would be greatly impacted by the economic downturn;

f. As such the court finds that there was a substantial and material change of circumstances to justify a modification/extension of alimony *in futuro*.

Having determined that a substantial and material change of circumstances had occurred since the divorce, the trial court went on to consider the relevant factors set forth in Tennessee Code Annotated section 36-5-121(i).[3] Based on its assessment of Wife's need, Husband's ability to pay, and other relevant factors, the trial court ordered that Husband continue to pay alimony *in futuro* in the amount of $6,200 per month beginning in January 2015 and continuing for a period of six years or until Husband's retirement, whichever occurs later. Additionally, the trial court awarded Wife $30,000 as alimony *in solido* for attorney's fees. Husband filed a timely notice of appeal to this Court on March 30, 2015.

### ISSUES PRESENTED

The parties present the following issues on appeal, as we have restated them:

1. Whether the trial court erred in finding a substantial and material change in circumstances existed to warrant a modification of Husband's alimony *in futuro* obligation.[4]

2. Whether the trial court erred in determining the amount of Husband's continued alimony *in futuro* obligation.

---

[3] Tennessee Code Annotated section 36-5-121(i) (2014) sets forth twelve factors that, to the extent that they are relevant, courts should consider in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment of such support.

[4] As Wife points out, the trial court's finding of a "substantial and material" change in circumstances is not entirely consistent with the MDA's language providing that alimony *in futuro* may be modified upon a showing of a "material, unanticipated" change in circumstances. The distinction has no bearing on the outcome of this case, however, because, as we explain below, there has not been any change in circumstances in this case that is "material" as the courts define that term.

3. Whether the trial court erred in awarding Wife alimony *in solido* for attorney's fees and in denying Husband's petition for attorney's fees.

Additionally, both parties request an award of attorney's fees incurred on appeal.

## STANDARD OF REVIEW

On appeal, we review the trial court's findings of fact de novo upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). "Because modification of a spousal support award is factually driven and calls for a careful balancing of numerous factors, a trial court's decision to modify support payments is given wide latitude within its range of discretion." *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (citations omitted). In particular, the question of whether there has been a showing of changed circumstances sufficient to permit modification of the support obligation is in the sound discretion of the trial court. *Id.* Accordingly, we are "generally disinclined to second-guess a trial judge's spousal support decision" absent an abuse of that discretion. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Rather, "the role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Id.* (quoting *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)). Nevertheless, we will find an abuse of discretion "when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). Additionally, we review the trial court's decision to award attorney's fees as alimony *in solido* to an economically disadvantaged spouse using an abuse of discretion standard. *Owens v. Owens*, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007).

## DISCUSSION

This case involves the modification of an award of alimony *in futuro*. Alimony *in futuro* "is intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony *in futuro* can be awarded "when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(f)(1). The statute governing spousal support in Tennessee provides that alimony *in futuro* remains in the court's control for the duration of the award and "may be increased, decreased, terminated,

extended, or otherwise modified, upon a showing of a substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

A court may not modify or terminate a spousal support award until it first finds that a sufficient change in circumstances has occurred since the entry of the original support decree. *Bogan*, 60 S.W.3d at 727-28 (citing Tenn. Code Ann. § 36-5-101(a)(1)). Thus, in most cases, the party seeking modification of an alimony award must initially prove that a substantial and material change in circumstances has occurred. *See Malkin v. Malkin*, --- S.W.3d ----, No. W2014-00127-COA-R3-CV, 2015 WL 1423346, at *3 (Tenn. Ct. App. Mar. 26, 2015), *perm. app. denied* (Tenn. July 21, 2015) (quoting *Wiser v. Wiser*, 339 S.W.3d 1, 12 (Tenn. Ct. App. 2010)). In the present case, however, the parties' MDA slightly altered the initial showing required of a party seeking to modify Husband's alimony *in futuro* obligation. In pertinent part, the MDA states that "[t]he alimony in futuro may be modified by either party upon a showing of a *material, unanticipated change in circumstances*." (emphasis added). When the contractual language used in an MDA is plain and unambiguous, the Court's function is to interpret and enforce the MDA according to its plain terms. *See Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561-62 (Tenn. Ct. App. 2003) (citations omitted). In this case, the plain language of the MDA provides that Husband's alimony *in futuro* obligation may be modified upon a showing of a "material, unanticipated" change in circumstances. Accordingly, it appears that the parties disposed of the statutory requirement that such a change in circumstances be "substantial."[5] As such, our first task is to determine whether Wife met her burden of proving a change in circumstances that was not anticipated or contemplated by the parties at the time of their divorce. *See Wiser*, 339 S.W.3d at 12 ("A change is material if it was not 'anticipated or [within] the contemplation of the parties at the time' of the original divorce.") (quoting *Bogan*, 60 S.W.3d at 728).[6]

---

[5] A change in circumstances in the context of alimony is "substantial" if it is one that "significantly affects either the obligor's ability to pay or the obligee's need for support." *Wiser*, 339 S.W.3d at 12 (quoting *Bogan*, 60 S.W.3d at 728).

[6] The parties' MDA purports to require that a party seeking to modify Husband's alimony *in futuro* obligation prove a change of circumstance that is both "material" and "unanticipated." As we have explained, however, the courts define a "material" change in circumstances in the context of alimony as one that is "not anticipated . . . at the time of the original divorce." *Wiser*, 339 S.W.3d at 12 (quoting *Bogan*, 60 S.W.3d at 728). Thus, because a change in circumstances that is "material" in the context of this case is, by definition, "unanticipated," the use of both terms in the MDA is redundant, and we need only to address whether the trial court erred in finding that Wife proved a "material" change in circumstances.

*Material Change in Circumstances*

As the party seeking a modification of alimony, Wife had the burden at trial of demonstrating that a change in circumstances sufficient to permit modification of Husband's alimony *in futuro* obligation had occurred since the entry of the parties' final decree of divorce in January 2005. In the proceedings below, the trial court determined that Wife presented evidence sufficient to meet that burden. The trial court based its conclusion on findings related to both Husband's increased ability to pay and Wife's continuing need for long-term support. Specifically, the trial court found that "Husband had a dramatic increase in income" since the parties' divorce and that "it was unanticipated that Husband's income would increase so dramatically." The trial court also found that "[t]he economic downturn in 2008 had a significant impact on Wife's employability" and that "[m]ost of the positions that Dr. Strausser [sic] identified [Wife] as being qualified in and able to pursue would be greatly impacted by the economic downturn." On appeal, Husband contends that the trial court erred in determining that a material change in circumstances had occurred since the parties' divorce. Having examined the evidence in the record as it relates to both Husband's ability to pay and Wife's need for continuing long-term support, we agree.

**Husband's Ability to Pay**

According to tax returns admitted into evidence at trial, Husband's average annual income from 2001 to 2003 was $436,055; his average annual income from 2011 to 2013 was $625,115. While the evidence clearly demonstrates that Husband's average annual income increased in the years following the parties' divorce, the parties vigorously dispute whether that increase was anticipated at the time of their divorce. In its order, the trial court determined that Husband's income increased 53% following the parties' divorce from $439,704 in 2003 to $673,268 in 2013. Husband contends that the trial court erred in measuring the percentage increase in his income from 2003 and instead should have measured from his 2004 income of $535,916. He argues that although the parties' 2004 tax return was not filed until after the parties' divorce was finalized, the parties considered the 2004 tax return in negotiating and agreeing to the terms of the MDA. As such, Husband argues that his income only increased 26% following the parties' divorce from $535,916 in 2004 to $673,268 in 2013. In our opinion, the difference between Husband's 2003 and 2004 income is not determinative of this issue. The increase in Husband's income since the time of the parties' divorce, no matter what method of calculation is used, does not constitute a material change in circumstances in this case.

Wife contends that this case is factually similar to *Wiser v. Wiser*, 339 S.W.3d 1 (Tenn. Ct. App. 2010). The parties in *Wiser* divorced in 2005 after more than 20 years of marriage. *Id*. at 7. The husband in that case was a self-employed businessman, whose

- 10 -

earnings were tied to the performance of his business; the wife, for the majority of the marriage, was a homemaker. *Id*. at 5. Tax returns showed that the husband had business income of $366,881 in 1999, losses of $197,509 in 2000, income of $69,895 in 2001, losses of $160,737 in 2002, and income of $536,781 in 2003. *Id*. at 6. Though the husband's business income fluctuated greatly during the marriage, the parties were able to live a lifestyle "of considerable wealth." *Id*. at 5. During trial, the trial court noted that the husband's fluctuating business income presented the court with "a problem with trying to come up with long-term alimony." *Id*. at 6. Nevertheless, the trial court ordered the husband to pay monthly alimony of $6,000 for four years, followed by $5,000 for the next four years, and $4,000 for the final four years. *Id*. In 2007, the wife filed a petition seeking to increase the amount of the husband's alimony obligation. *Id*. at 7. The trial court subsequently conducted a trial in which the husband's tax returns for 2004-2007 were entered into evidence. *Id*. The tax returns reflected that the husband had losses of $55,877 in 2004, income of $517,347 in 2005, income of $929,973 in 2006, and income of $770,033 in 2007. *Id*. at 8. Despite the increase in the husband's earnings, the trial court declined to modify its previous alimony award, stating that the existing alimony award was sufficient to meet the wife's needs. *Id*. at 10. On appeal, this Court reversed the trial court's denial of the wife's petition. *Id*. at 22. In doing so, we noted the trial court's observation that the husband's "erratic" earnings at the time of the parties' divorce had since stabilized. *Id*. at 14. This Court also noted that at the time of the parties' divorce, the trial court was not certain whether the husband's company would "make a million dollars a year or lose money or just break even." *Id*. Accordingly, the Court concluded that the husband's increased income constituted a substantial and material change in circumstances. *Id*. After weighing the relevant factors, we ordered that the trial court's original alimony award be modified to $10,000 per month and remain constant until the termination date. *Id*. at 18. Notably, we stated that the termination date for the husband's alimony obligation remained unchanged from the date set in the original decree of divorce. *Id*.

The case at bar is distinguishable from *Wiser* in several respects. The first, and most obvious, distinction between the two cases is the erratic nature of the husband's income prior to the divorce in *Wiser* and the relatively consistent growth of Husband's income over time in this case. In *Wiser*, the income of husband's business fluctuated by more than six figures in each of the years immediately preceding the parties' divorce. *Id*. at 6. His income was so unpredictable at the time of the parties' divorce that the trial court expressed the difficulty it faced in making an award of long-term alimony. *Id*. On appeal from the modification proceedings, this Court noted the stabilization of the husband's income and concluded that the "over fivefold increase in annual profits" constituted a substantial and material change in circumstances. *Id*. at 14. In this case, Husband's income has never been erratic or unpredictable. Even accepting that Husband's income increased 53% between the time of the parties' divorce and Wife's petition to modify alimony, the two cases are hardly

- 11 -

comparable. Although it fluctuates somewhat from year to year, tax returns reflect that Husband's income has increased relatively steadily since the parties' divorce. This cannot be said to be unanticipated. We reject the argument that such an increase in the income of a professional over time constitutes an unforeseeable change in circumstances.

The second, and perhaps the more important, distinction between the two cases is the nature of the modification sought. The wife in *Wiser* sought an increase in the amount of Husband's monthly alimony obligation commensurate with the increase in his income. She did not seek to extend the term of the payments, and this Court expressly provided that its decision did not have any effect on the termination date. *Id*. at 18. Here, Wife seeks not only an increase in alimony but also to extend the Husband's monthly alimony obligation beyond the termination date set forth in the parties' divorce decree.[7] Moreover, in this case, unlike in *Wiser,* the parties bargained for and agreed to Husband's alimony obligation for a specific amount and a specific period of time when they executed their MDA. There is no dispute that Husband has made every payment and fully complied with the agreed upon terms of the MDA. By itself, the fact that Husband's ability to pay has increased since the parties' divorce, though perhaps relevant to whether the amount of his alimony obligation should be modified, is not necessarily relevant to whether its term should be extended. Indeed, past cases in which courts have extended alimony beyond its previously ordered termination date have involved a substantial and material change in circumstances that was not contemplated at the time of entry of the final decree. *See Owens v. Owens*, No. M2012–01186–COA–R3–CV, 2013 WL 3964793, at *4 (Tenn. Ct. App. July 30, 2013) (holding that the impact of the economic recession on the obligee spouse's career as a real estate agent constituted a change in circumstances sufficient to extend alimony); *Butler v. Butler*, No. 02A01-9702-CH-00038, 1997 WL 576533, at *5-6 (Tenn. Ct. App. Sept. 18, 1997) (holding that where the obligor spouse's alimony obligation had previously been reduced due to his inability to pay, a subsequent increase in his ability to pay constituted a change in circumstances sufficient to extend alimony); *see also Waddey v. Waddey*, 6 S.W.3d 230, 231 (Tenn. 1999) (involving an obligee spouse's petition to extend alimony after being diagnosed with breast cancer). Accordingly, we conclude that Husband's increased income since the parties' divorce is insufficient to constitute a material change in circumstances in this case.

## Wife's Need

The trial court also made findings related to Wife's continuing need for support in reaching its conclusion that a change in circumstances had occurred. Specifically, the trial

---

[7] While Wife also seeks to increase the amount of Husband's monthly alimony obligation, the fact that she filed her petition to modify just eight months before the end of the original ten-year period, it is clear that her primary objective was to extend its term.

- 12 -

court found that "[t]he economic downturn in 2008 had a significant impact on Wife's employability" and that "[m]ost of the positions that Dr. Strausser [sic] identified her as being qualified in and able to pursue would be greatly impacted by the economic downturn." Having thoroughly reviewed the record on appeal, we conclude that these findings related to the economic recession and its impact on Wife's ability to provide for herself financially are not supported by the evidence in the record. Wife did not present any evidence at trial that the recession adversely impacted her or restricted her job opportunities. Wife's only testimony directly related to the adverse impact of the economic recession was related to the Front Street condo's decline in value. Moreover, although Dr. Strauser acknowledged that the recession had a "very negative effect" on the job market in the United States, he testified that it disproportionately impacted individuals with low skill sets or without a college education. Dr. Strauser testified that Wife's skills, credentials, and work experience would make her attractive to employers and that there would have been jobs available to her regardless of the recession. He further testified that given Wife's education and strong social skills, she was capable of being an above-average employee. There is no evidence in the record to suggest otherwise.

Wife relies on *Owens v. Owens*, No. M2012–01186–COA–R3–CV, 2013 WL 3964793 (Tenn. Ct. App. July 30, 2013), to support her argument that the economic recession was an unforeseeable change in circumstances. However, the facts of that case make it distinguishable from the case at bar. After the parties in *Owens* divorced in 2004, the wife in that case was awarded rehabilitative alimony of $3,000 per month through November 2012. *Id*. at *1. In 2009, the wife filed a petition seeking to increase and extend the husband's alimony obligation. *Id*. At the trial on her petition, the wife presented evidence of the steps she had taken to become a successful real estate agent; she testified that despite her efforts, she was unable to support herself because the economic recession dramatically reduced home sales. *Id*. Ultimately, the trial court denied the wife's petition, finding that she failed to present evidence to show that she made "all reasonable efforts at rehabilitation." *Id*. at *2. On appeal, this Court reversed and concluded that the wife should receive alimony *in futuro* payments of $2,000 per month after her rehabilitative alimony award ended. *Id*. at *5. In part, this Court determined that a change in circumstance sufficient to justify an alimony modification occurred because "the recession greatly impacted her opportunities." *Id*. at *4. Wife emphasizes that statement from *Owens* in support of her argument that the recession's impact on her job opportunities constitutes a material change in circumstances in this case. Evidence of a recession, however, without evidence of its specific impact on a party's need for or ability to pay support, does not constitute a change in circumstances sufficient to justify modifying a previous alimony award. *See Bordes v. Bordes*, 358 S.W.3d 623, 627 (Tenn. Ct. App. 2011) (rejecting the trial court's finding that the "economic downturn" constituted a substantial and material change in circumstances because there was no evidence in the record to support it). In *Owens*, this Court observed the specific impact that the

recession had on the wife's profession as a real estate agent by "dramatically reduc[ing] the sales of homes." *Owens*, 2013 WL 3964793, at \*1. Conversely, in the present case, there is no evidence in the record to support the trial court's finding that the recession "had a significant impact on Wife's employability."

At the time of the parties' divorce, Husband was earning a large income from his dental practice, and Wife was earning a comparatively small income writing children's books and organizing cotillion programs. It was under those circumstances that the parties negotiated and executed the MDA that was incorporated into their final divorce decree. Pursuant to the MDA, Husband was required to make alimony payments totaling $930,000 to Wife over the course of the next ten years. Obviously, the fact that the alimony would end after ten years was contemplated and foreseeable by the parties when they executed the MDA. Nevertheless, Wife has made little effort to find a greater source of income or to set aside a portion of the income she has received. Instead, she has continued to invest a great deal of her time, energy, creativity, and resources into endeavors that produce little, if any, income. While we certainly do not intend to discourage Wife from engaging in whatever creative or artistic pursuits she desires, we cannot force Husband to bear the financial consequences of her decisions. Husband has fully complied with his obligation under the parties' original agreement, and we do not find any change in circumstances that warrants a modification of that agreement. Simply put, there is no basis in the record from which a material or unanticipated change in circumstances could be found. As such, we reverse the trial court's decision to modify Husband's alimony *in futuro* obligation.[8]

### *Attorney's Fees*

Husband also challenges the trial court's award to Wife of $30,000 as alimony *in solido* for attorney's fees. The trial court's decision to award attorney's fees as alimony *in solido* to an economically disadvantaged spouse is largely discretionary, and appellate courts will not ordinarily interfere with such a decision unless the trial court did not appropriately exercise its discretion based on the facts. *Owens*, 241 S.W.3d at 496. The trial court fails to exercise its discretion properly when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). While there are no strict parameters for the exercise of such discretion, an award of attorney's fees should generally be "just and equitable under the facts of the case." *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). Given that these proceedings were initiated by Wife, and in

---

[8] Based on our resolution of this issue, arguments by the parties related to whether the trial court erred in setting the amount of Husband's modified alimony obligation are pretermitted, and we decline to discuss that issue.

light of our determination that the trial court's alimony modification in this case was not warranted, we conclude that an award of attorney's fees to Wife is likewise not appropriate. *See id*. ("[R]equring parents who participate [in] custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy."). We therefore reverse the trial court's award to Wife of alimony *in solido* for attorney's fees.

Finally, both parties contend that they are entitled to an award of attorney's fees incurred on appeal. "An award of appellate attorney's fees is a matter within this Court's sound discretion." *Chaffin v. Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006). "When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case." *Id*. (citing *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)). Given our disposition of the issues presented on appeal and the respective financial positions of the parties in this case, we decline to award attorney's fees to either party on appeal.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's modification of Husband's alimony *in futuro* obligation. Additionally, we reverse the trial court's award of alimony *in solido* for Wife's attorney's fees. Finally, we decline to award attorney's fees to either party on appeal. This matter is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to the Appellee, Renee Pembroke, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE