IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2020 Session

## RANDALL G. HIMES v. ELIZABETH BATES HIMES

Appeal from the General Sessions Court for Wilson County
No. 2010-DV-116    A. Ensley Hagan, Jr., Judge

_____

### No. M2019-01344-COA-R3-CV
_____

In this post-divorce dispute, ex-spouses filed competing petitions to modify alimony. The wife also sought to hold her former husband in civil contempt for failure to maintain the term life insurance policy specified in the parties' marital dissolution agreement. The trial court declined to hold the husband in contempt. Both parties obtained partial relief on their modification petitions. The court granted the wife a judgment for a retroactive increase in alimony. The court also reduced the husband's alimony obligation prospectively based on his inability to pay the current amount during his retirement. We conclude that the evidence preponderates against a finding that the husband had the ability to pay additional alimony in the first two months of 2019. We further conclude that the wife is entitled to an award of post-judgment interest. So we modify the court's retroactive judgment accordingly. Otherwise, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court
Affirmed as Modified and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Amanda G. Crowell and Lindsey W. Johnson, Lebanon, Tennessee, for the appellant, Randall G. Himes.

Donald Capparella, Tyler Chance Yarbro, and Tarsila Crawford, Nashville, Tennessee, for the appellee, Elizabeth Bates Himes.

# OPINION

## I.

### A.

In 2011, Randall G. Himes ("Husband") and Elizabeth Bates Himes ("Wife") divorced after a twenty-nine-year marriage. In the final divorce decree, the Wilson County General Sessions Court adopted and incorporated the parties' Marital Dissolution Agreement ("MDA"). Among other things, the parties agreed that Husband would pay Wife $5,000 each month in periodic alimony until her death or remarriage or Husband's death. And, as security for the alimony obligation, Husband agreed to maintain a $500,000 term life insurance policy with Wife as the beneficiary.

Three-and-a-half years later, Husband petitioned the court to reduce or terminate his alimony obligation, as well as the life insurance requirement. Husband alleged that he had been terminated from his job and was unable to secure comparable employment. The trial court found that a substantial and material change in circumstances had occurred warranting a reduction in alimony. On April 22, 2016, the court reduced the alimony award to $2,500 per month, retroactive to January 1. The court left the life insurance requirement intact.

On November 29, 2017, Wife filed both a petition for civil contempt and a petition to modify alimony. She asked the court to hold Husband in contempt for his failure to maintain the life insurance policy required by the MDA. Her modification petition was premised on Husband's increased income since the last modification order. Wife sought a return to the original alimony amount specified in the MDA, retroactive to the date of her petition. Husband filed a counter-petition. He alleged that a dramatic increase in the required life insurance premium and his retirement plans warranted a decrease or termination of his alimony obligation.

### B.

At the time of trial on the competing petitions, Husband was two months shy of his sixty-fifth birthday. Wife was 62. They had been divorced for eight years.

During the marriage, Husband had been the family's sole income earner. He earned a substantial salary as an executive with the Screen Actors Guild ("SAG"). Wife took care of the home and the couple's four children. The parties agreed in the MDA to divide the marital estate fairly equally. Husband retained the marital residence after compensating Wife for her share of the home's equity. Wife received primarily liquid assets.

2

Wife never returned to the workforce after the divorce. She lived on Husband's alimony payment and assets she received in the property division. She never purchased a new home, choosing instead to rent an apartment. Over time, she accumulated sizeable revolving balances on several credit cards. She also owed the IRS for unpaid taxes. At some point, she elected to begin drawing her share of Husband's pension.

After 37 years with SAG, Husband's position was eliminated in April 2015. And in 2016, the court found that, despite Wife's demonstrated need, Husband lacked the ability to pay the full alimony amount. The court reduced Husband's alimony obligation to $2,500 per month based on an imputed annual income of $60,000.[1]

Husband then accepted a position with Team Payments, a California company owned by a friend. His initial salary was $72,000 plus commissions. In February 2017, his base salary increased to $100,000. As evidenced by his tax returns, Husband's gross income from employment was approximately $105,700 in both 2017 and 2018.

In 2017, Husband learned that the annual premium on the required life insurance policy was rising from $2,702 to $27,740. Husband began searching for a replacement policy. Unwilling to pay the exorbitant new premium, he let the policy lapse in October 2017. He replaced the lapsed policy with a $250,000 term policy with a more affordable monthly premium. While searching for the new policy, he discovered that his long-time heart condition had worsened. And the ownership of Team Payments changed, raising concerns about his job status.

Sometime in 2018, Husband began preparing for retirement. He explained that upkeep on his Mt. Juliet residence became more difficult as he aged. He also desired to live closer to his children in Nashville. Because the Nashville housing market was more expensive than Mt. Juliet, Husband needed his uncle's assistance to accomplish this move. In November 2018, he sold his Mt. Juliet home and used a portion of the proceeds to pay off his credit card debt and other expenses. He used the remaining cash as a down payment on a $635,000 Nashville home he purchased with his uncle. His uncle also helped him qualify for a $450,000 mortgage loan. Husband and his uncle owned the Nashville property as tenants in common. And the uncle paid a portion of the mortgage debt each month.

Husband's uncle lived in Chicago, Illinois. The uncle explained to the court that he welcomed the opportunity to help his favorite nephew. The current arrangement served his needs as an investment vehicle. And he had his own room in the Nashville home whenever he visited. The uncle also revealed that, when the uncle dies, Husband will divide an inheritance worth approximately $400,000 with two other relatives.

---

[1] The court found Husband willfully unemployed based on evidence that he had rejected a $60,000 job offer.

Husband was diagnosed with cancer that November. He also lost his job at Team Payments. As he was nearly 65, Husband decided it was time to retire.

By the time of trial, Husband had been retired for about three months. He maintained that he no longer had the ability to pay Wife alimony. His social security payments would begin in a couple of months. He expected to receive $2,650 per month. While he could also access his pension benefits at the same time, he hoped to wait until he turned 66. At 65, he would receive $3,742 per month. If he waited just one year, the payment would increase to $4,147. Other than his home, his only other asset was his IRA. He had been forced to use some of those funds since he retired. His remaining IRA balance was $240,000.

As Wife related, she struggled to make ends meet with the reduced alimony payment. She was unable to pay for necessary car repairs and dental work. At times, she ate her meals out of vending machines. When asked whether she had considered applying for a job, she explained that she was preoccupied with caring for her ailing mother. She was her mother's primary caregiver between April 2016 and February 2017, when her mother passed away.

Husband took the position that Wife had no real need for alimony. In his view, her current financial situation was the result of poor decision making since the divorce. By electing early withdrawal from Husband's pension, she received a significantly smaller monthly payment than if she had waited. And she chose not to work even though she was capable of working at least part-time. He also questioned her spending choices.

Wife admitted she had the ability to work. But she had been out of the job market for over thirty years. At 62, she had few marketable skills. She had not sought additional education or training since the divorce. Yet she acknowledged that, depending on the outcome of the trial, she might be forced to look for some sort of employment. Wife agreed that she was currently eligible to draw $981.80 in social security benefits. She hoped to postpone receipt of her benefits until age 65 so that her payment would be higher.

Husband established that Wife failed to disclose her inheritance from her mother in pre-trial discovery. Her mother's estate was in probate. Wife acknowledged that she would divide the net estate with her four siblings. Her mother had owned several parcels of real property, currently listed for sale at $2.6 million. Wife admitted that she had received $39,000 in life insurance proceeds after her mother's death. She used those funds to buy new tires, pay her outstanding legal fees from the previous trial, and to have some dental work done.

4

C.

The court did not find Husband in contempt. At the time of the divorce, neither party foresaw the dramatic increase in the life insurance premium. And Husband had made diligent efforts to obtain a replacement policy before the original policy lapsed. Husband's conduct was not willful, and Wife had suffered no damages as a result of the policy lapse.[2]

The court determined that the parties had intended for the life insurance requirement to secure any alimony arrearages that existed upon Husband's death. Yet the court ordered Husband to maintain the $250,000 term life insurance policy with Wife as the sole named beneficiary. The court also directed Husband to ensure that Wife's beneficiary status was not "tied to the alimony obligation."

On the competing modification petitions, the court granted partial relief to both parties. The court found that Wife had shown a substantial and material change warranting a retroactive increase of the alimony award. And it awarded Wife a $16,000 judgment for the retroactive increase. Because Husband had proven grounds for a prospective adjustment based on his retirement, the court reduced the alimony award to $1,500 per month, effective from the date of trial.

Husband moved to alter or amend the court's judgment. *See* Tenn. R. Civ. P. 59.04. The court granted his motion in part. While the court declined to modify its alimony ruling, it agreed that the provision in its original order that "the life insurance shall be separate and not tied to the alimony is just flat wrong." So the court modified its original order to provide that the life insurance requirement was intended to secure any alimony arrearage that existed upon Husband's death. Otherwise, Husband was free to name another beneficiary.

Husband also requested a stay pending appeal. The court agreed to stay enforcement of the $16,000 judgment if Husband deposited the judgment proceeds with the court clerk. The funds were transferred on June 6, 2019. The court stayed disbursement of the judgment proceeds until the completion of any appeals.

**II.**

On appeal, Husband challenges the trial court's alimony decisions. Specifically, he contends that the trial court abused its discretion by retroactively increasing the alimony award and in failing to terminate or further reduce his alimony obligation after his retirement. For her part, Wife argues that the trial court erred in partially granting

---

[2] Neither party has appealed the court's contempt ruling.

5

Husband's motion to alter or amend the judgment. She also seeks an award of post-judgment interest and attorney's fees.

Our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of those findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

We will not alter the trial court's modification decision unless the court abused its discretion. *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010). So our review is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nonetheless, a lower court's discretionary decisions do not escape appellate scrutiny. *Id.* In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.*

### A. Alimony Modification

Both parties agree that the MDA provided for alimony *in futuro*. An award of *alimony in futuro* "remain[s] in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A) (2017). The party seeking modification bears the burden of showing the requisite change in circumstances. *Wiser*, 339 S.W.3d at 12. A change is material if it occurred after the entry of the last alimony order and was unanticipated at the time of that order. *Jekot v. Jekot*, 362 S.W.3d 76, 83 (Tenn. Ct. App. 2011). A change is substantial if "it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan v. Bogan*, 60 S.W.3d 721, 728 (Tenn. 2001).

Proving a substantial and material change is merely the first hurdle. *See id.* at 730; *Wiser*, 339 S.W.3d at 14. The party requesting modification must also show that modification is warranted. *Bogan*, 60 S.W.3d at 730; *Wiser*, 339 S.W.3d at 14. In this second step of the modification analysis, our courts are guided by the statutory factors in Tennessee Code Annotated § 36-5-121(i), to the extent relevant. *Bogan*, 60 S.W.3d at 730; *Wiser*, 339 S.W.3d at 14-15. The two most important factors are need and ability to pay. *Bogan*, 60 S.W.3d at 730. Notably, in a modification proceeding, the recipient's need is not the court's primary concern. *Id.* "[T]he ability of the obligor to provide support must be given at least equal consideration." *Id.*

6

1. Retroactive Increase

We begin with Husband's challenge to the court's retroactive award. As Husband points out, the trial court's order lacks a specific finding of a substantial and material change. *See id.* at 727-28 ("It is well settled that a court may not modify or terminate a spousal support award unless it first finds that a substantial and material change in circumstances has occurred since the entry of the original support decree."). We have two choices for how to proceed. *See Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). We may "remand the case to the trial court with directions to issue sufficient findings and conclusions." *Id.* Or, we may conduct our own "de novo review of the record to determine where the preponderance of the evidence lies." *Id.* Given the well-developed proof in the record, we choose the latter option.

The last modification order was based on the parties' circumstances in March 2016. At the time of the last trial, Husband had been unemployed for almost a year. The court modified alimony based on an imputed annual income of $60,000.

At this trial, Husband conceded that he began working for a new employer, Team Payments, on April 4, 2016. His initial base salary of $72,000 increased to $100,000 in February 2017. With commissions, Husband earned approximately $105,700 from his employment in both 2017 and 2018. But Husband's employment ended as of December 3, 2018. And based on his age and health, Husband decided to retire.

Husband's increased income since the entry of the last modification order significantly impacted his ability to pay. *See Bogan*, 60 S.W.3d at 728. We conclude that this increase constituted a substantial and material change in circumstances.

To determine whether this change warranted modification, the trial court considered the evidence in light of the statutory factors, particularly the evidence of need and ability to pay. The trial court awarded Wife additional alimony of $1,000 per month for the period between November 2017 and February 2019. Husband challenges the evidentiary basis of the court's decision.

Husband primarily argues that he did not earn any income in December 2018, or the first two months of 2019. So, he claims his alimony obligation for those months should not have been increased. Our review of the record indicates that Husband received his normal monthly income from Team Payments in December 2018. But we find no indication that he received any income during the following two months.

Wife counters that Husband had access to other funds from which to pay alimony during those months. Husband's other assets are relevant to the modification analysis. *See Malkin v. Malkin*, 475 S.W.3d 252, 261 (Tenn. Ct. App. 2015) (noting that income is only one factor in the ability-to-pay analysis). But income from the sale of the marital residence

7

should not be considered. *See Norvell v. Norvell*, 805 S.W.2d 772, 775 (Tenn. Ct. App. 1990). Excluding those funds, Husband did not have a significant amount of liquid assets from which to pay additional alimony. Husband needed the funds in his IRA to pay his normal monthly expenses until his social security benefits were available. Wife failed to meet her burden of establishing that Husband had the ability to pay additional alimony in January and February 2019.

Still, Husband earned a substantial income in 2017 and 2018. His monthly earnings during those years were approximately $2,700 more than the amount imputed at the last trial. There is no evidence in the record that he experienced a corresponding increase in his expenses during this time frame. The evidence supports a finding that, until Husband lost his employment with Team Payments, he had the ability to pay Wife an additional $1,000 per month in alimony.

Husband also questions Wife's need for additional alimony in 2017 and 2018. Her income and expense statement evidenced a current monthly deficit of $868, without accounting for the expenses she had postponed. And while Husband complains Wife failed to curtail her spending, her expenses, as a whole, are fairly reasonable.

Although Wife's monthly deficit is less than the amount awarded, this difference is not so substantial as to constitute an abuse of discretion. *See Bogan*, 60 S.W.3d at 727 ("[A] trial court's decision to modify support payments is given 'wide latitude' within its range of discretion." (citation omitted)). A difference of $131 is well within the range of reasonableness. *See Avaritt v. Avaritt*, No. M2007-01804-COA-R3-CV, 2008 WL 4072087, at *5 (Tenn. Ct. App. Aug. 28, 2008) (noting that the alimony amount awarded was within the range of reasonableness).

But the evidence preponderates against a finding that Husband had the ability to pay additional alimony during January and February 2019. So we modify the court's retroactive judgment to $14,000, reflecting a $1,000 monthly increase for the period between November 2017 and December 2018.

2. Prospective Reduction

Turning to the prospective award, the trial court found that Husband's decision to retire at the end of 2018 was objectively reasonable. This finding has not been challenged on appeal. "[W]hen an obligor's retirement is objectively reasonable, it . . . constitute[s] a substantial and material change in circumstances." *Bogan*, 60 S.W.3d at 729. The trial court reduced Husband's alimony obligation to $1,500 per month as of the trial date. Husband contends that the proof at trial warranted termination of the alimony award or, at least, a further reduction.

8

Contrary to Husband's argument on appeal, we find no reversible error in the trial court's consideration of the parties' separate assets. Wife had no significant assets other than the IRA she received as part of the property division. The remaining balance in her IRA account at the time of trial was $100,000. The court valued Wife's potential inheritance at $400,000. Taken together, the court determined that Wife had $500,000 in separate assets. In comparison, the court found Husband's separate assets had a somewhat higher value. The remaining balance in Husband's IRA was $240,000. And Husband had a half-interest in a $635,000 residential property in Nashville. Husband argues that the court failed to deduct the mortgage from the home's value. Even so, Husband was only responsible for a portion of that debt. And, as the court noted, Husband also had a future inheritance from his uncle.

The evidence does not preponderate against the court's assessment of Wife's need. Husband points out that Wife's need would be greatly diminished if her actual income and expense figures were replaced with the higher pension benefit and lower monthly expenses she could have enjoyed had she made wiser choices. We recognize, as did the trial court, that if Wife had made different choices over the years, her need might be different. Still, the court's task was to assess Wife's need based on her present circumstances, not a hypothetical scenario. *See* Tenn. Code Ann. § 36-5-121(i)(1). And while Wife admitted she had the ability to work, the record is virtually silent as to her earning capacity. No proof was offered of the type of job Wife might be qualified for or the income she could expect to receive. Husband's bald assertion that Wife could have obtained a part-time job, without more, is insufficient.

We reach the same conclusion with regard to the trial court's finding that Husband had the ability to pay the reduced alimony amount during retirement. Husband estimated that he would receive $2,650 per month in social security benefits, and, in another year, $3,752 per month from his pension. His projected monthly expenses were $8,742. As noted by the trial court, his only significant expense was his home mortgage, which his uncle paid in part. Husband complains that he cannot pay the amount awarded without prematurely liquidating his retirement funds. On this record, we cannot agree. With his significant earning capacity and valuable separate assets, Husband has other options.

The trial court did not abuse its discretion in failing to further reduce or terminate Husband's alimony obligation.[3] The court "properly identified and applied the most appropriate legal principles applicable to the decision." *See Lee Med., Inc.*, 312 S.W.3d at 524. The court's findings concerning Wife's need and Husband's ability to pay are "properly supported by evidence in the record." *See id.* And the decision to reduce, rather

---

[3] In light of our conclusion that the court did not err in refusing to terminate the alimony award, we find it unnecessary to address Husband's corollary argument that his life insurance obligation should also be terminated.

than terminate, the alimony award "was within the range of acceptable alternative dispositions." *See id.*

## B. Post-Judgment Interest

Wife contends that the trial court erred in not awarding her post-judgment interest. Whether a party is entitled to post-judgment interest is a question of law, which we review de novo. *Vooys v. Turner*, 49 S.W.3d 318, 321 (Tenn. Ct. App. 2001).

Post-judgment interest is mandatory in Tennessee. Tenn. Code Ann. § 47-14-122 (2013). This statutory mandate applies to all money judgments, including a judgment awarding alimony. *See Graves v. Graves*, E2004-02141-COA-R3-CV, 2005 WL 1412109, at *3 (Tenn. Ct. App. June 16, 2005). The obligation to pay post-judgment interest exists even if the judgment fails to include such an award. *State v. Thompson*, 197 S.W.3d 685, 693 (Tenn. 2006).

"A party's right to postjudgment interest is based on that party's entitlement to use the proceeds of the judgment after the award." *Vooys*, 49 S.W.3d at 322. Post-judgment interest ordinarily accrues from the date the judgment is entered. *Thompson*, 197 S.W.3d at 693. But when a judgment provides for a future payment date, interest will not begin to accrue until payment is due. *See Price v. Price*, 472 S.W.2d 732, 734 (Tenn. 1971). Husband argues that Wife is not entitled to use the judgment proceeds until the completion of all appeals. And, thus, she is not entitled to post-judgment interest. We disagree.

Post-judgment interest automatically began accruing on May 7, 2019, the date Wife became entitled to payment. The court's stay of execution did not affect the accrual date. *See Vooys*, 49 S.W.3d at 327; *Polk v. Polk*, No. 88-218-II, 1989 WL 17463, at *2 (Tenn. Ct. App. Mar. 3, 1989) (explaining that the "stay of execution did not postpone the due date of the [judgment]; it merely postponed the availability of legal means of enforcement"). Post-judgment interest accrues even if the amount of the judgment is contested on appeal. *See Ballard v. Ballard*, 455 S.W.2d 592, 593-94 (Tenn. 1970) (holding that pendency of an appeal did not affect the accrual of interest on the judgment).

Husband's $16,000 payment to the court clerk's office does not change our conclusion. Depositing the judgment proceeds with the court will not relieve a party from paying the statutorily mandated interest "unless the payment is made in unconditional satisfaction of the judgment." *Vooys*, 49 S.W.3d at 323. Husband's payment was not unconditional. He tendered the funds to obtain a stay of execution. *See Vooys*, 49 S.W.3d at 323 (holding that husband's deposit of judgment proceeds with the court was not unconditional when "he prevented [his wife] from obtaining [the funds] by execution and challenged her right to [the funds] on appeal"); *see also Gardner v. Steinforth*, No. 01-A-01-9405-CR-00233, 1994 WL 581467, at *2 (Tenn. Ct. App. Oct. 21, 1994) (reasoning that defendant's appeal of judgment rendered his deposit of the proceeds with the court

"less than unconditional"). As our supreme court has made clear, to stop interest from accruing, funds must be deposited with "an explicit designation that such money is to be paid in satisfaction of a judgment." *Ali v. Fisher*, 145 S.W.3d 557, 565 (Tenn. 2004). It is not enough to transfer funds to the court clerk "for safe-keeping pending appeal." *Id.*

We conclude Wife is entitled to post-judgment interest on the modified judgment. On remand, the trial court shall calculate the accrued interest, beginning from May 7, 2019, the date payment was due on the original judgment. *See* Tenn. R. App. P. 41; *Inman v. Alexander*, 871 S.W.2d 153, 154 (Tenn. Ct. App. 1993) (holding that post-judgment interest on modified judgment accrues "from the date of the original judgment until the judgment is finally paid").

## C. Equitable Estoppel

Wife also contends that the trial court erred in partially granting Husband's Rule 59.04 motion. She argues that Husband should be equitably estopped from advocating that the court change its original ruling on her status as sole beneficiary of the life insurance policy. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315-16 (Tenn. 2009) (listing the essential elements of equitable estoppel). Wife insists that Husband's legal position in his motion was inconsistent with his trial testimony.

We decline to consider Wife's argument for the first time on appeal. She never made this argument in the trial court. So we deem this issue waived. *See Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) ("[P]arties will not be permitted to raise issues on appeal that they did not first raise in the trial court."). To avoid this obstacle, Wife contends that her pre-trial attempt to amend her answer to assert equitable estoppel as an affirmative defense preserved this issue for appeal.[4] But Wife's pre-trial motion has no bearing here. The parties' pre-trial dispute was entirely unrelated to the argument she now advances on appeal.

## D. Attorney's Fees

Lastly, we address the question of attorney's fees. Wife has requested an award of attorney's fees at trial and on appeal.[5] She posits three possible bases for an award—the MDA, Tennessee Code Annotated § 36-5-103(c), or her status as a disadvantaged spouse.

---

[4] Wife also listed the court's refusal to grant her pre-trial motion to amend as an issue on appeal. But she made no argument in support of this issue. This issue is also waived. *See Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010) ("[Where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

[5] In his conclusion, Husband also requested an award of attorney's fees incurred on appeal. This issue was not properly presented. As he failed to include this request in his statement of the issues, we

11

Our courts have no "discretion to deny an award of fees mandated by a valid and enforceable" MDA. *Eberbach v. Eberbach*, 535 S.W.3d 467, 479 (Tenn. 2017). The language used in the MDA governs our decision. *See id.* (directing courts to "look to the actual text" to determine whether an attorney's fee provision "is mandatory and applicable"). The MDA contains an enforcement provision, which reads

> In the event either party has to petition the Court for enforcement of any of the provisions in this Agreement, then the party at fault shall be responsible for reasonable attorney fees, expenses and Court costs in the enforcement of same.

We afford the terms in the MDA their natural and ordinary meaning. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Absent any ambiguity, we will "interpret and enforce the MDA according to its plain terms." *Cooley v. Cooley*, 543 S.W.3d 674, 683 (Tenn. Ct. App. 2016).

Wife contends that she had to petition the court to enforce both the alimony and the life insurance provisions in the MDA. And she was partly successful. Still, we conclude that Wife's requested fees do not fit within the scope of the MDA's enforcement provision.

Wife's petition to modify alimony cannot be characterized as a petition to enforce the alimony provision in the MDA. "The trial court retains the power and discretion to modify terms contained in the MDA relating to [alimony] upon sufficient changes in the parties' factual circumstances." *Eberbach*, 535 S.W.3d at 474. In 2016, the court modified the alimony provision. It is undisputed that Husband was current in his alimony payments when Wife filed her petition.

While Wife did petition the court to enforce the life insurance provision, the court declined to find Husband "at fault." Only the party "at fault" is responsible for paying the fees associated with enforcement of the MDA. We must enforce the parties' contract as written. *See Eberbach*, 535 S.W.3d at 479; *Cooley*, 543 S.W.3d at 683.

Wife also requests an award of fees under Tennessee Code Annotated § 36-5-103(c). This statute authorizes a court to award reasonable attorney's fees to a "prevailing party" in a proceeding to modify an alimony award. Tenn. Code Ann. § 36-5-103(c) (Supp. 2020). Reasoning that neither party prevailed, the trial court declined to award fees on this basis. We review the trial court's decision for an abuse of discretion. *Eberbach*, 535 S.W.3d at 475. Wife sought a return to the original alimony amount. Husband requested

---

deem the issue waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012); *Gibson v. Bikas*, 556 S.W.3d 796, 810 (Tenn. Ct. App. 2018).

a reduction or termination of alimony. And the court awarded both parties partial relief. We cannot say that the court's decision was an abuse of discretion.

This Court also has discretion to award the prevailing party attorney's fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). In making our decision, we consider the following factors: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). In light of these factors, we grant Wife's request for fees incurred on appeal. While we provided Husband some relief, Wife has been largely successful on appeal. And she lacks sufficient funds to pay her own legal fees.

Finally, Wife requests an award of fees as the disadvantaged spouse. Attorney's fees are awarded on this basis under the alimony statute, Tennessee Code Annotated § 36-5-121. *See Owens v. Owens*, 241 S.W.3d 478, 495 (Tenn. Ct. App. 2007) ("An award of attorney's fees to an economically disadvantaged spouse is usually characterized as alimony in solido."). Under the circumstances here, we decline to make an award on the basis of the alimony statute.

## III.

Because the evidence preponderates against a finding that Husband had the ability to pay an increased amount of alimony in the first two months of 2019, we modify the amount of the court's judgment to $14,000. We also conclude that Wife is entitled to an award of post-judgment interest. We affirm the court's judgment as modified. We remand this matter to the trial court for a calculation of post-judgment interest, a determination of reasonable attorney's fees to Wife on appeal, and for any further proceedings, consistent with this decision, that may be necessary.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

13