IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2023 Session

## PAMELA SALAS v. JOHN DAVID ROSDEUTSCHER ET AL.

**Appeal from the Circuit Court for Davidson County**
No. 18C1229       Kelvin D. Jones, Judge

---

**Nos. M2021-00449-COA-R3-CV;
M2022-00130-COA-R3-CV**

---

Plaintiff's attorneys appeal the trial court's imposition of sanctions against them in the amount of $68,617.28 and the denial of their second motion to disqualify the trial court judge. We affirm the trial court's discretionary decision to impose sanctions, but we vacate the amount of sanctions awarded and remand for the trial court to calculate the reasonable amount of monetary sanctions in keeping with the procedures and considerations outlined in this opinion. We have determined that Plaintiff's attorneys' issue regarding the trial court's denial of their second motion to recuse is moot. Finally, we decline to award attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Mark Andrew Hammervold, Elmhurst, Illinois, for the appellant, Afsoon Hagh.

Brian P. Manookian, Nashville, Tennessee, pro se.

Dixie W. Cooper and Matthew Hawkins Cline, Brentwood, Tennessee, for the appellees, John David Rosdeutscher and Cumberland Plastic Surgery P.C.

**OPINION**

FACTUAL AND PROCEDURAL HISTORY

This appeal concerns an order for discovery sanctions against attorneys Brian P. Manookian and Afsoon Hagh. The underlying healthcare liability case has been

voluntarily dismissed by the plaintiff; however, due to allegations of discovery abuses and attorney misconduct, the trial court retained jurisdiction over the issue of sanctions. *See Menche v. White Eagle Prop. Grp., LLC*, No. W2018-01336-COA-R3-CV, 2019 WL 4016127, at *6 (Tenn. Ct. App. Aug. 26, 2019) ("[I]n the typical case wherein the trial court enters judgment for one party, the judgment does not become final unless and until a pending motion for sanctions is adjudicated.").

A brief discussion of the facts of the underlying healthcare liability lawsuit is necessary to understand the discovery issues. Pamela Salas ("Plaintiff") experienced a wound-healing complication after a cosmetic surgery performed by Dr. John David Rosdeutscher in January 2017. Thereafter, Plaintiff received additional care and surgeries from Dr. Kent Higdon. Plaintiff retained the law firm of Cummings Manookian PLC to represent her, and she filed a health care liability action against Dr. Rosdeutscher and Cumberland Plastic Surgery P.C. (collectively, "Defendants") in May 2018. Plaintiff was initially represented by attorneys Brian Cummings, Brian Manookian, and Afsoon Hagh; however, when the Cummings Manookian PLC law firm dissolved, Ms. Hagh and Mr. Manookian (collectively referred to as "Plaintiff's attorneys") continued to represent Plaintiff.[1]

The issue at the center of this sanctions dispute is whether Plaintiff's attorneys made false statements and misrepresentations to the trial court, orally and in discovery responses, regarding Dr. Higdon's status as an expert witness and their knowledge of Dr. Higdon's opinions about the care Plaintiff received from Dr. Rosdeutscher. The communications between Plaintiff's attorneys and Dr. Higdon began in early 2018, before the lawsuit was filed. In February 2018, Dr. Higdon's administrative assistant emailed Ms. Hagh stating, in part, "If you want to retain Dr. Higdon as an expert witness, we require a payment of $1,500 for the first hour of review. " Ms. Hagh followed up stating, "At this time, we are not in a position to hire an expert witness. If that changes, I will most certainly let you know." On March 28, 2018, Ms. Hagh emailed Dr. Higdon's assistant stating, "I will be sending the records and payment in the next 7-10 days so that we can retain Dr. Higdon as an expert." On April 26, 2018, Ms. Hagh sent Dr. Higdon a letter and some of Plaintiff's medical records, stating, "Once you have completed your review of the records and formed your resulting opinions, please contact me . . . I do not ask that you provide a written report." The letter went on to provide a timeline of the medical care Dr. Rosdeutscher provided to Plaintiff. The closing sentence of the letter stated, "Again, I do not need a written report from you upon completion of your review of the medical records and operative reports."

---

[1] Mr. Manookian was temporarily suspended from the practice of law in September 2018. TENN. SUP. CT. ORDER, No. M2019-00630-SC-BAR-BP, *Order Reinstating Temporary Suspension* (filed Oct. 11, 2019). On May 17, 2019, the Tennessee Supreme Court entered an Order dissolving the temporary suspension of Mr. Manookian's law license subject to his ongoing compliance with certain conditions. *Id.* On October 11, 2019, Mr. Manookian's suspension from the practice of law was reinstated. *Id.*

Ms. Hagh and Dr. Higdon met on May 10, 2018, at the office of Cummings Manookian PLC. Ms. Hagh provided Dr. Higdon with a $1,500 check that noted in the memo line, "SALAS – EXPERT REVIEW." In accordance with Tenn. Code Ann. § 29-26-122, Dr. Higdon signed a statement supporting Plaintiff's certificate of good faith.[2] Ms. Hagh denies that Dr. Higdon provided her with any document he prepared reflecting his opinions at this May 10, 2018 meeting, but Dr. Higdon testified that he "believed" he provided a document to Ms. Hagh at the meeting on May 10:

> Q: Did you prepare a document for Ms. Hagh following your review of the records she sent you?
> A: I believe I did.
> Q: I understand – how did you provide that document to Ms. Hagh?
> A: I met her at her office and gave that to her. And I signed a form for her at that time.
> Q: You recall two documents at that meeting with Ms. Hagh, a document that you had authored for her, correct?
> A: Yeah. I think it was like a page, and I also signed something that was official or something like that for her.

Dr. Higdon was not able to locate a copy of the document that he believes he drafted and provided to Ms. Hagh, and Ms. Hagh denies the document exists.

In August 2018, Plaintiff provided discovery responses to Defendants' interrogatories. Defendants' first and second interrogatories and Plaintiff's responses are as follows:

---

[2] The certificate of good faith stated:

> Counsel for the Plaintiff consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:
> (A) Are competent under § 29-26-115 to express opinion(s) in the case; and
> (B) Believe, based on the information available from the medical records reviewed concerning the care and treatment of the Plaintiff for the incident(s) at issue and, as appropriate, information from the Plaintiff or others with knowledge of the incident(s) at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to the Plaintiff or Plaintiff's counsel; and that despite the absence of this information there is a good faith basis for maintaining the action as to each Defendant consistent with the requirements of § 29-26-115. Refusal of the Defendants to release the medical records in a timely fashion, or where it is impossible for the Plaintiff to obtain the medical records waives the requirement that the expert review the medical records prior to expert certification.

1.  With respect to each witness whom you will or may call as an expert to give opinion testimony in the trial of this matter (whether in person or by deposition), please state the following, consistent with Tenn. R. Civ. P. 26.02(4):

(a)  The name and address of the witness;
(b) The field in which the witness is to be offered as an expert;
(c) A summary of the witness's qualifications, including a list of all publications authored in the previous ten years;
(d) The substance of the facts to which the witness is expected to testify;
(e) The substance of the opinions to which the witness is expected to testify and a summary of the grounds for each such opinion;
(f) The caption, court, and case number for all other cases in which the witness has testified as an expert during the previous four years;
(g) The compensation to be paid to the witness for each aspect of involvement in this case;
(h) The date when the expert was first contacted;
(i) The date the expert was formally retained to serve in any capacity in this case;
and
(j) The date when each expert was sent each medical, hospital, or other records or materials in this case.

**ANSWER**:

**Expert witnesses have not been retained at this time.  This Interrogatory will be supplemented pursuant to the Tennessee Rules of Civil Procedure and applicable scheduling order.**

2. With respect to any treating health care providers who are expected to testify as to: (1) the standard of care applicable to any Defendant in this matter in caring for patients such as you, or (2) the cause, nature, and/or extent of any alleged injuries, please state the following:
(a) The name, phone number, email address, and address of the witness;
(b) The field in which the witness is expected to testify;
(c) A summary of the witness's qualifications;
(d) The substance of the facts to which the witness is expected to testify; and
(e) The substance of the opinions to which the witness is expected to testify and a summary of the grounds for each such opinion.

**ANSWER:**

- 4 -

> **Kent Higdon, M.D.**
> **Vanderbilt University Department of Plastic Surgery**
> **. . .**
> **The Plaintiff objects to this Interrogatory as Dr. Higdon is a treating physician and ordinary witness, therefore the information requested in (b)-(e) is not required by the Tennessee Rules of Civil Procedure. See[] Alessio v. Crook. Subject to and without waiving the objection, Dr. Higdon's qualifications can be found here:**
> **. . .**
> **Dr. Higdon is a board-certified plastic surgeon and his medical records, which have previously been provided to counsel for Defendant, include some, but not all, of the information responsive to this request. Any additional information and/or opinions can be obtained during a discovery deposition.**

According to a case management conference order entered on June 17, 2019, the deadlines regarding expert witness disclosures were as follows:

- The Plaintiff's Rule 26.02(4) disclosures shall be due by November 15, 2019, so long as Dr. Kent Higdon has been deposed by September 1, 2019.
- The Defendants' Rule 26.02(4) disclosures shall be due by February 1, 2020.
- Depositions of expert witness shall be completed by June 1, 2020.

Mr. Manookian deposed Dr. Higdon on September 24, 2019. Counsel for Vanderbilt University Medical Center was present for the deposition, but Dr. Higdon was not personally represented by counsel. Relevant portions of Dr. Higdon's deposition are as follows:

Q: Dr. Higdon, do you agree that you treated Pamela Salas at Vanderbilt University Medical Center?
A: Yes, sir.
Q: Do you agree that you are a treating physician for Pamela Salas at Vanderbilt University Medical Center?
A: Yes, sir.
Q: Do you agree that you developed opinions and observations about Pamela Salas's condition as a result of acting as a treating physician for Pamela Salas?
A: Yes, sir.
Q: You haven't been retained as a consultant or an expert by anyone -- by any attorney acting in this case; correct?

A: Not to my knowledge.

Q: You don't have a contract with any attorney in this case for you to provide services in exchange for money; correct?

A: I don't believe so.

. . .

Q: Do you agree that at the time that you saw Pam Salas on April 22, 2017, she had suffered nipple loss and partial breast loss as a result of an operation performed by Dr. Rosdeutscher?

A: Yes.

MR. CLINE: Object to the form.

BY MR. MANOOKIAN: Q Do you agree that Pamela Salas suffered nipple loss as a result of improper care provided by Dr. Rosdeutscher?

MR. CLINE: I'm going to object here. This is something that was addressed before the deposition. This is outside the course and scope of the doctor's treatment of this patient. As far as I know, he's not seen the record from Dr. Rosdeutscher and wouldn't have a basis to comment. And so I'm going ask the witness if he intends to comment, that we leave this issue off until an expert disclosure can be prepared by you, served on us, so that we can prepare for this deposition. If you'd like to continue with other topics, that's acceptable.

MR. MANOOKIAN: No, I'm going to ask him the questions that- I- want to ask today.

MR. CLINE: Then we're going [to] stop the deposition.

MR. MANOOKIAN: Okay. The deposition's terminated. You'll need to file a motion promptly.

Defendants filed a Motion for Protective Order or in the Alternative Motion to Compel Related to the Deposition of Dr. Kent Higdon stating that, "The key issue presented by this motion is whether Dr. Higdon is an expert witness, requiring an expert disclosure, or a treating physician." In response to the motion for protective order, Mr. Manookian asserted that Dr. Higdon was solely a treating physician, not an expert witness, and that no expert disclosure was warranted. Mr. Manookian reiterated this position at the hearing on the motion for protective order on November 8, 2019, stating to the court, "[Dr. Higdon is] not my expert, I don't know what his opinions are." Based on Mr. Manookian's statements, the trial court denied the motion to compel, extended the expert deadline, allowed counsel to continue the deposition of Dr. Higdon, and required Defendants to reimburse Plaintiff's attorneys for "the actual amount paid to Dr. Higdon for rescheduling this deposition."

Following the hearing, Defendants served additional discovery requests on Plaintiff seeking all information, documents and correspondence exchanged between Dr. Higdon and Plaintiff's attorneys, including a statement as to whether Dr. Higdon was provided with Dr. Rosdeutcher's medical records. Ms. Hagh responded to the discovery responses on

November 15, 2019, producing some documents. Defendants then issued a subpoena duces tecum to Dr. Higdon seeking any documents he exchanged with or received from Plaintiff's counsel. Dr. Higdon's responses identified documents, medical records, and emails that were not produced by Plaintiff's attorneys. Upon receiving Dr. Higdon's document production, Defendants filed a motion for sanctions against Mr. Manookian and Ms. Hagh.

On December 17, 2020, Mr. Manookian submitted a complaint regarding the trial court judge to Tennessee's Board of Judicial Conduct. On January 7, 2021, Mr. Manookian filed a motion in the trial court to recuse the trial judge. The trial court denied the motion to recuse, and Mr. Manookian appealed. On March 4, 2021, this Court affirmed the trial court's denial of the motion to recuse. *Salas v. Rosdeutscher*, No. M2021-00157-COA-T10B-CV, 2021 WL 830009, at *3 (Tenn. Ct. App. Mar. 4, 2021).

The trial court held a hearing on Defendants' motion for sanctions on January 10, 2020 and ordered:

> By close of business on January 15, 2020, Plaintiff's counsel shall produce to the Court via email all correspondence and documents of any type that are in any way related to the Plaintiff, this lawsuit, or Dr. Rosdeutscher between:
> o  Dr. Higdon (including anyone affiliated with Dr. Higdon or working in his office) and
> o  Cummings Manookian, Hagh Law, Brian Manookian, Brian Cummings, Afsoon Hagh (or anyone in any way affiliated with these attorneys or law firms).

Plaintiff's attorneys failed to provide the requested documents by January 15, 2020, and the trial court entered an order on January 28, 2020, ordering all counsel to appear in court on February 7, 2020, for Plaintiff's attorneys to show cause why they had not complied. Ultimately, Ms. Hagh produced additional documents responsive to Defendants' request and eventually produced the document Dr. Higdon signed supporting the certificate of good faith.

Following a hearing on February 19, 2020, which was a continuation of prior hearings on Defendants' motion for sanctions, the trial court ordered Defendants to conduct a second deposition of Dr. Higdon to inquire into his interactions with Plaintiff's counsel. Specifically, the court was interested in "(1) whether Plaintiff's counsel retained Dr. Higdon as an expert, (2) whether Dr. Higdon reviewed records at the request of Plaintiff's counsel, [and] (3) whether Dr. Higdon informed Plaintiff's counsel of his opinions related to the care of the Defendants, etc." Dr. Higdon was deposed on March 1, 2021. Dr. Higdon testified in his deposition, in part, as follows:

Q: Dr. Higdon, I'm going to ask you some questions about whether you were previously paid to provide expert opinions to Afsoon Hagh. My question to you first, though, is, are you currently serving as an expert witness for any party to this case?
A: No.
Q: Are you planning to serve as an expert witness in this case in the future?
A: No, sir.
Q: Are you going to offer opinions on the standard of care in this case?
A: No, sir.
Q: Are you going to offer opinions on causation in this case?
A: No, sir.

The trial court held a final hearing on Defendants' motion for sanctions on April 19, 2021. The court informed the parties that the court would not be dismissing the case with prejudice and requested that the parties submit proposed findings of fact and conclusions of law on the sanctions issue. On April 26, 2021, Mr. Manookian filed a second motion to recuse the trial judge, which the trial court denied by order entered on April 28, 2021. Also on April 28, 2021, the trial court entered a 42-page order awarding Defendants sanctions against Mr. Manookian and Ms. Hagh in the amount of $68,617.28 (comprised of attorney's fees in the amount of $65,387.50 and expenses in the amount of $3,229.78). The court outlined specific instances of misconduct on the part of Plaintiff's attorneys and stated:

> The Court finds that these actions by Mr. Manookian and Ms. Hagh constitute an egregious abuse of the discovery process and are also contrary to their duties as Officers of the Court. This abuse is exacerbated by the fact that Mr. Manookian and Ms. Hagh have stubbornly refused to acknowledge any wrongdoing whatsoever. The Court further finds that the misconduct of Mr. Manookian and Ms. Hagh constitutes, at least, reckless conduct, failure to comply with Court Orders, and deliberate disregard for the integrity of the judicial process. The Court believes Mr. Manookian and Ms. Hagh intended to present Dr. Higdon to the jury as an impartial treating physician. This is tantamount to attempting to commit a fraud upon the Court. Whether this was their goal or not, the Court finds the misconduct of Mr. Manookian and Ms. Hagh sufficient to warrant sanctions under Tenn. R. Civ. P. 37.02 and the Court's inherent authority to sanction.

Ms. Hagh appeals, raising the following issues:

1. Whether the April 28, 2021 Sanctions Order reflected the independent judgment of the trial court?
2. Whether the trial court abused its discretion in sanctioning Ms. Hagh?
3. Whether the trial court erred in sanctioning Hagh as "punishment"?

4. Whether the trial court erred in awarding Defendants $68,617.28 in attorneys' fees and costs?

Mr. Manookian also appeals, raising similar issues to Ms. Hagh as well as the following additional issues:

1. Whether Judge Kelvin Jones erred in refusing to disqualify himself?
2. Whether the court abused its discretion in sanctioning Mr. Manookian?
3. Whether the Trial Court erred in ordering that records of the attorney's fees awarded against Plaintiff which were filed in the Appellate Court be "sealed" and "destroyed."
4. Whether the Trial Court erred in itself disclosing, and requiring Plaintiff to disclose, Dr. Kent Higdon as her Certificate of Good Faith Expert?

STANDARD OF REVIEW

Appellate review of a trial court's imposition of discovery sanctions and its determination of the appropriate sanction is under an abuse of discretion standard. *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008) (citing *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004)). "An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party." *Id.* (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)).

ANALYSIS

A. Independent judgment of the trial court

Plaintiff's attorneys first assert that the trial court's order for sanctions against them should be vacated because the order does not reflect the trial court's independent judgment. In support of this argument, Plaintiff's attorneys cite *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303 (Tenn. 2014). In response, Defendants assert that the judge extensively revised the proposed order before entering it, which confirms that the order is a product of the trial court's independent judgment and, therefore, *Smith* is inapposite.

Our Supreme Court emphasized the importance of a trial court's exercise of independent judgment when arriving at its decisions in *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d at 312 . Indeed, the obligation of judges to "arrive at their decisions by applying the relevant law to the facts of the case" is a "'high judicial function,'" and "a court's decision must be, and must appear to be, the result of the exercise of the trial court's own judgment." *Smith*, 439 S.W.3d at 312-13. With respect to party-prepared orders, the *Smith* Court held:

[M]ost courts have approved, but not recommended, the practice of trial courts receiving and using party-prepared findings of fact, conclusions of law, and orders as long as two conditions are satisfied. First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision.

*Id.* at 315-16.

In this case, the trial judge announced that it would not dismiss the underlying health care liability case with prejudice and took the case under advisement to rule on the details of the sanctions issue, requesting the parties to submit proposed findings of fact and conclusions of law.

Although the court relied heavily on Defendants' proposed order, the court did not adopt Defendants' submission wholesale. Rather, the court made multiple additions, edits, revisions, and deletions to the draft order. Some revisions were substantive and others were stylistic. As for the substantive revisions, the court declined to adopt all of the sanctions Defendants requested. Specifically, the court struck Defendants' proposed sanction of suspending Plaintiff's attorneys from the practice of law and drafted an entirely new procedural history section for the order adding rulings to address a "late-filed affidavit." In addition to the substantive revisions, the trial court made numerous stylistic revisions. The trial court's revisions, additions, and deletions to the order lead us to conclude that the final order entered by the trial court reflected the judge's independent judgment, deliberation, and decision. *See Dalrymple v. Dalrymple*, No. M2016-01905-COA-R3-CV, 2017 WL 5462188, at *4 (Tenn. Ct. App. Nov. 14, 2017) (concluding that the trial court exercised independent judgment because, despite "[t]he court adopt[ing] the format of Mother's findings, the court made many edits to them").

We have reviewed the hearing transcript, the proposed orders, and the final order, and conclude that the final order reflects the trial court's exercise of its own independent judgment. Therefore, we decline to vacate the trial court's order as Plaintiff's attorneys request.

B. Award of sanctions

Plaintiff's attorneys next argue that the trial court abused its discretion when it imposed sanctions on them for the following areas of misconduct identified in the trial court's order:

- Submitting false discovery responses (Mr. Manookian and Ms. Hagh);
- Eliciting false testimony from Dr. Higdon (Mr. Manookian and Ms. Hagh);

- Withholding properly-requested and discoverable evidence when initially requested in discovery (Mr. Manookian and Ms. Hagh);
- Making false statements to the Court in writing and orally, and then doubling down on those false statements even after the fraud was uncovered (Mr. Manookian and Ms. Hagh);
- Convincing the Court to sanction the Defendants based upon fraudulent misrepresentations (Mr. Manookian);
- Violating the Court's Order from the January 10, 2020 hearing to produce all correspondence with Dr. Higdon by producing nothing (Ms. Hagh);
- Violating the Show Cause Order issued January 28, 2020 to produce all correspondence with Dr. Higdon by withholding the two documents from the May 2018 meeting with Dr. Higdon (Ms. Hagh);
- Falsely telling the Court the document prepared by Dr. Higdon and provided to Ms. Hagh at the May 2018 meeting did not exist (Ms. Hagh); and
- Acquiescing in the misconduct of co-counsel (Mr. Manookian and Ms. Hagh).

Defendants assert the trial court's imposition of sanctions was appropriate pursuant to Tenn. R. Civ. P. 37 and "the [c]ourt's inherent authority to sanction."

Our Supreme Court has long recognized the "inherent power" and "broad discretion" of trial judges "in imposing procedural sanctions in order to preserve the integrity of the discovery process." *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 742 (Tenn. 2015); *see also Mansfield v. Mansfield*, No. 01A019412CH0058, 1995 WL 643329, at *5 (Tenn. Ct. App. Nov. 3, 1995) ("The authority to impose sanctions for abuse of the discovery process derives from the rules and the court's inherent powers."). In particular, "[t]he trial courts of Tennessee must and do have the discretion to impose sanctions . . . in order to penalize those who fail to comply with the Rules and, further, to deter others from flouting and disregarding discovery orders." *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982). Sanctions are one tool the trial court can employ to preserve "the effectiveness of discovery and procedural rules." *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009). Reviewing courts are instructed to "allow discretionary decisions [such as a trial court's decisions regarding sanctions] to stand even though reasonable judicial minds can differ concerning their soundness." *Mercer*, 134 S.W.3d at 133 (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

Plaintiff's attorneys urge this Court to conclude that they were not required to provide a Tenn. R. Civ. P. 26 expert disclosure for Dr. Higdon and, therefore, none of their conduct before the trial court was sanctionable. We do not view this dispute so narrowly.

We have performed a review of Plaintiff's attorneys' conduct throughout the case, including a review of the hearing transcripts, email correspondence between counsel, discovery responses, depositions, and the entire technical record and cannot say that the trial court abused its discretion in deciding sanctions were warranted under the totality of the circumstances. *See Alexander*, 156 S.W.3d at 15, 17 (reviewing the "totality of the circumstances presented" in determining that sanctions were warranted pursuant to the trial court's "inherent authority to take actions to prevent abuse of the discovery process"). Specifically, we find that the evidence does not preponderate against the trial court's determination that Plaintiff's attorneys knew of Dr. Higdon's opinion on the care Dr. Rosdeutscher provided to Plaintiff and, yet, Plaintiff's attorneys repeatedly and unequivocally stated that they did not know Dr. Higdon's opinions. When questioned on this issue, Dr. Higdon testified as follows:

Q: It's a pretty narrow issue of did they pay you to review records?
A: Yes.
. . .
Q: Did they pay you to form opinions as part of that review?
A: Yes, sir.
. . .
Q: And when you talked to Ms. Hagh, did you talk to her about concerns you had about the care Dr. Rosdeutscher provided to Ms. Salas?
A: I did.

Despite the fact that Plaintiffs' attorneys knew Dr. Higdon's opinions on the care Plaintiff received from Dr. Rosdeutshcer, Mr. Manookian repeatedly denied that he knew Dr. Higdon's opinions, stating to the trial court: "I don't know what his opinions are," "I don't know his opinions either," and "I don't know what his opinions are going to be."

Regardless of whether Plaintiffs' attorneys had specifically retained Dr. Higdon as their Tenn. R. Civ. P. 26 expert to testify at trial, the record shows that Plaintiff's attorneys provided Dr. Higdon with Dr. Rosdeutscher's medical records, paid Dr. Higdon for his time reviewing the records (noting that the $1,500 check was for "expert review"), asked Dr. Higdon to "complete[] [a] review of the records and form[] resulting opinions[,]" and met with Dr. Higdon in person to discuss his opinions regarding the anticipated litigation and Dr. Rosdeutscher's care and treatment of Plaintiff. Dr. Higdon testified that he discussed his opinion on Dr. Rosdeutscher's care with Ms. Hagh, and he "believed" he provided Ms. Hagh with a document commenting "on things that [he] felt that Dr. Rosdeutscher should or should not have done[.]"[3] The evidence shows that Plaintiff's

---

[3] In the bulleted list of misconduct, the trial court stated that Ms. Hagh, "Falsely t[old] the Court the document prepared by Dr. Higdon and provided to Ms. Hagh at the May 2018 meeting did not exist." We have reviewed Dr. Higdon's deposition testimony, the letter Ms. Hagh provided to Dr. Higdon, and the certificate of good faith materials and find the evidence preponderates against the trial court's finding that Ms. Hagh falsely told the court that a document Dr. Higdon "believed" he prepared did not exist. Dr.

- 12 -

attorneys knew Dr. Higdon's opinions on the care and treatment Plaintiff received from Dr. Rosdeutshcer, and we agree with the trial court that it was disingenuous for Mr. Manookian to repeatedly state that Dr. Higdon had not provided Plaintiff's attorneys with his opinions, whether orally or in writing.

Moreover, Ms. Hagh failed to produce all of her communications with Dr. Higdon in her discovery responses. Regardless of whether Ms. Hagh's failure to disclose relevant communications with Dr. Higdon was an effort to conceal that she was aware of Dr. Higdon's opinions or simply an oversight, her failure to produce all of the communications with Dr. Higdon constituted a discovery violation.[4]

In our view, this case does not require us to go into depth on the distinctions and comparisons between an expert for purposes of the good faith certificate and a treating physician and a testifying expert. The failure of Plaintiff's attorneys to be forthright in their communications with the trial court regarding their knowledge of Dr. Higdon's opinions, which led the court to sanction defense counsel and further led to years of judicial resources spent untangling the discovery issues, along with the withholding of their properly discoverable communications with Dr. Higdon, are the bases for the sanctioned conduct in this case. The case escalated and lenghtened unnecessarily because of Plaintiff's attorneys' lack of candor with opposing counsel and the trial court, as well as Plaintiff's attorneys' failure to provide documents requested in discovery. Under the facts before us, and keeping our deferential standard of review at the forefront, we find that reasonable judicial minds could differ concerning the soundness of the trial court's decision to impose sanctions on Plaintiff's attorneys and, therefore, the trial court's discretionary decision to impose monetary sanctions on Plaintiff's attorneys must stand. *See Mercer*, 134 S.W.3d at 133.[5]

---

Higdon was equivocal about whether he prepared a document in advance of the May 10, 2018 meeting and provided the same to Ms. Hagh. His testimony was replete with the equivocal qualifier "I believe," and he was never able to locate or produce the document he believed he created. Plaintiff's attorneys were resolute that no such document existed, and in their initial letter to Dr. Higdon they specifically asked him not to create a written document. Therefore, the evidence preponderates against the trial court's finding that Ms. Hagh was untruthful in her disclosure that she did not have the purported document Dr. Higdon believed he may have created. Nevertheless, this finding is not a basis to undo the imposition of sanctions for the other conduct discussed in the body of this opinion.

[4] Ms. Hagh did not provide a privilege log or assert a privilege that would prevent the withheld documents from being produced.

[5] We have also considered Mr. Manookian's argument that the trial court erred in compelling Ms. Hagh to produce Dr. Higdon's signed statement supporting the certificate of good faith. Tennessee Code Annotated section 29-26-122(d)(1)-(2) states as follows:
(d)(1) Subject only to subdivision (d)(2), the written statement of an expert relied upon in executing the certificate of good faith is not discoverable in the course of litigation.
(2) If a party in a health care liability action subject to this section prevails on the basis of the failure of an opposing party to offer any competent expert testimony as required by §

- 13 -

C. Amount of monetary sanctions

We next consider how the trial court arrived at the amount of monetary sanctions to impose against Plaintiff's attorneys. With respect to the amount of the sanctions imposed, the trial court stated as follows:

> The Court hereby Orders Mr. Manookian and Ms. Hagh to pay the Defendants monetary sanctions for reasonable attorney's fees and expenses incurred in litigating issues surrounding the Motion for Sanctions. The Court has reviewed the Declaration of Dixie Cooper and supporting documentation filed under seal.[] The Court finds that the attorney's fees and expenses set forth in the Declaration are reasonable and were necessarily incurred as a result of the misconduct of Mr. Manookian and Ms. Hagh. Accordingly, the Court hereby Orders that Mr. Manookian, Ms. Hagh, and Hagh Law, PLLC, are jointly and severally liable for attorney's fees in the amount of $65,387.50 and expenses in the amount of $3,229.78.

Plaintiff's attorneys assert that the trial court improperly awarded the full amount of attorney's fees Defendants requested without giving Plaintiff's attorneys an opportunity to contest the amount of fees requested. Defendants assert, *inter alia*, that Plaintiff's attorneys waived their ability to contest the reasonableness of the award by failing to raise it in the court below.

Defendants submitted their request for $65,387.50 in attorney's fees along with a supporting affidavit on April 23, 2021. Defendants requested 249.1 hours of attorney, paralegal and IT support time; they submitted their time sheet(s) under seal. Five days later, the trial court entered its order granting the full amount of attorney's fees Defendants requested. Defendants contend that, by failing to file a motion to alter or amend or to raise the issue of attorney's fees before the trial court, Plaintiff's attorneys waived their right to raise this issue on appeal. This contention is incorrect. "[O]ur rules do not require that parties file motions to alter or amend judgments in order to preserve their appellate rights

---

29-26-115, the court may, upon motion, compel the opposing party or party's counsel to provide to the court a copy of each such expert's signed written statement relied upon in executing the certificate of good faith. The medical experts may be compelled to provide testimony under oath, as determined by the court, for the purposes of determining that party's compliance with subsection (a) or (b).

At the time Ms. Hagh was asked to produce the certificate of good faith, the underlying litigation had been voluntarily dismissed, and the court was working to resolve the sanctions issue. As the court was considering whether sanctions were warranted and attempting to determine whether Plaintiff's attorneys had been truthful in their disclosure to the court that they were unaware of Dr. Higdon's opinions, it was appropriate under those circumstances to compel production of all documents in Plaintiff's attorneys' possession that concerned Dr. Higdon.

in non-jury cases." *Fulmer v. SARCO, GP*, No. M2022-01479-COA-R3-CV, 2023 WL 5787082, at *5 (Tenn. Ct. App. Sept. 7, 2023); *see also Eastman Credit Union v. Bennett*, No. E2015-01339-COA-R3-CV, 2016 WL 1276275, at *11 (Tenn. Ct. App. Mar. 31, 2016) ("[H]aving raised the issue on appeal of attorney's fees for work completed at trial, Eastman was not required to file a motion to alter or amend the judgment or motion for new trial in order to avoid waiving the issue.") (citing Tenn. R. App. P. 3(e), which provides that, except for certain issues arising from a jury trial not applicable here, "[a]n appeal as of right may be taken without moving in arrest of judgment, praying for an appeal, entry of an order permitting an appeal or compliance with any other similar procedure."). The trial court entered the final order only five days after Defendants filed their request for fees and supporting affidavit. Therefore, we conclude that Plaintiff's attorneys have not waived the right of appellate review of the amount of monetary sanctions awarded against them.

Monetary sanctions serve the purpose of "providing compensation for the expenses caused by the inappropriate conduct" and are "the most common sanction for discovery abuse" *Mansfield*, 1995 WL 643329, at *5. Tennessee Rules of Civil Procedure 37.01(4) and 37.02 permit a court to impose monetary sanctions, including reasonable expenses and attorney's fees, on a lawyer who is non-compliant with a court order. In addition to the authority provided in these procedural rules, we have held that "trial courts possess the inherent authority to take actions to prevent abuse of the discovery process" which includes the authority to impose monetary sanctions. *Alexander*, 156 S.W.3d at 15 (affirming award of sanctions even when non-compliance with an order was not at issue). "When monetary sanctions include legal expenses, the appropriate amount of legal expenses should be determined using the relevant portions of Tenn. S. Ct. R. 8, . . . the rule generally used by courts when they are required to award reasonable attorneys' fees." *Mansfield*, 1995 WL 643329, at *5.

Tennessee Supreme Court Rule 8, Rule of Professional Conduct ("RPC") 1.5(a) provides guidance for courts in determining reasonable fees:

> The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;

- 15 -

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
(10) whether the fee agreement is in writing.

The Tennessee Supreme Court has explained the appropriate procedure to be followed by the trial court when determining the amount of an attorney's fee award:

> In terms of procedure, the trial court should develop an evidentiary record, make findings concerning each of the factors, and then determine a reasonable fee that depends upon the particular circumstances of the individual case. To enable appellate review, trial courts should clearly and thoroughly explain the particular circumstances and factors supporting their determination of a reasonable fee in a given case.

*Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185-86 (Tenn. 2011) (internal quotation marks, alterations, and citations omitted).  Moreover, this Court has stated:

> When the trial court's order provides no indication that it considered the reasonableness of the fee or any of the RPC factors, the appropriate remedy is to vacate and remand for the trial court to make an express determination as to the reasonableness of the fees. *See, e.g.*, *Ferguson Harbour Inc. v. Flash Mkt., Inc.*, 124 S.W.3d 541, 552-53 (Tenn. Ct. App. 2003) (remanding fee award for reconsideration where the trial court made "no specific findings as to the factors which justify this amount in fees"); *Southwind Residential Properties Ass'n, Inc. v. Ford*, No. W2016-01169-COA-R3-CV, 2017 WL 991108, at *13 (Tenn. Ct. App. Mar. 14, 2017) (remanding where "the trial court's ruling makes no mention of many of the factors outlined under Rule 1.5" and "neither the trial court's oral ruling, nor its written order, contains any finding that the award is reasonable under the circumstances").

*Smith v. All Nations Church of God*, No. W2019-02184-COA-R3-CV, 2020 WL 6940703, at *5 (Tenn. Ct. App. Nov. 25, 2020).

Here, the trial court did not cite to RPC 1.5, nor did it specifically analyze its factors when imposing monetary sanctions in the form of attorney's fees against Plaintiff's attorneys.  Moreover, the court did not provide an opportunity for Plaintiff's attorneys to respond to Defendants' affidavit to contest the amount of fees requested.  Therefore, we remand the case to the trial court to determine a reasonable fee based on RPC 1.5 and the procedures outlined above.[6]

---

[6] We decline to find that the trial court's failure to allow Plaintiff's attorneys an opportunity to contest the amount of attorney's fees Defendants requested was harmless error under Tenn. R. App. P. 36(e), as Defendants urge.  In addition, our holding vacating the award of monetary sanctions and

D. Plaintiff's attorneys second motion to recuse the trial judge

Plaintiff's attorneys assert that the trial court erred in denying Mr. Manookian's revised motion to recuse the trial judge. During the pendency of this case, Mr. Manookian filed two separate motions to recuse Judge Jones. The first motion was filed in January 2021 and was denied by the trial court. Mr. Manookian appealed to this Court, and this Court affirmed the trial court's decision to deny the motion in March 2021, holding:

> As our Supreme Court has explained, the judicial disqualification standards do not require recusal simply because the person seeking recusal has filed some type of complaint against the judge. *See Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 162 (Tenn. 2013) (collecting cases). For example, in one of the cases cited favorably by our Supreme Court in *Moncier*, the Court of Appeals of Ohio held that a disciplinary complaint filed against a judge will not by itself warrant the judge's recusal. *State v. Blankenship*, 115 Ohio App.3d 512, 685 N.E.2d 831, 833 (1996). The concern with strictly requiring recusal in such circumstances, of course, is that it could foster abuse of the judicial system by encouraging people to judge-shop and manufacture recusals. As a general matter, absent some additional showing of bias or prejudice resulting from the complaint against the judge, the complaint standing alone will not ordinarily require recusal. *Farm Credit Bank of St. Paul v. Brakke*, 512 N.W.2d 718, 722 (N.D. 1994).

*Salas*, 2021 WL 830009, at *3.

Mr. Manookian filed his second motion to recuse Judge Jones on April 26, 2021, and the trial court denied the motion, holding: "This Court has no doubt as to its ability to preside impartially in this case. This Court has no personal bias or prejudice concerning either party or their attorneys. The Court finds there to be no reasonable appearance of bias to question the Court's impartiality." Mr. Manookian appeals the trial court's ruling.

This Court has taken judicial notice[7] of the fact that Judge Jones is no longer presiding as a judge in the Davidson County Circuit Court. In light of our ruling upholding

---

remanding the case for the trial court to determine a reasonable fee pretermits Plaintiff's attorneys' issue regarding the trial court's order placing Defendants' attorneys' billing invoices under seal in the appellate record.

[7] Tennessee Rule of Evidence 201(b)(2) allows this court to take judicial notice of facts that are "not subject to reasonable dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005) (taking judicial notice of dates readily accessible in the court's record). "The result of taking judicial notice of a fact is the establishment of the admission of that fact into evidence." *Counts*, 182 S.W.3d at 291.

the trial court's imposition of sanctions against Plaintiff's attorneys, and due to the fact that Judge Jones will not preside over this case on remand, we find this issue has been rendered moot. *See Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty*, 301 S.W.3d 196, 204 (Tenn. 2009) ("A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party.").

### E. Attorney's fees on appeal

Defendants seek an award of attorney's fees incurred in this appeal. An award of fees on appeal is discretionary, and we must consider a number of factors, including success on appeal, the financial condition of the parties, and whether the appeal was taken in good faith. *Cooley v. Cooley*, 543 S.W.3d 674, 688 (Tenn. Ct. App. 2016) (citing *Chaffin v. Ellis*, 211 S.W.3d 264, 194 (Tenn. Ct. App. 2006)). Given our holdings on the issues presented on appeal, we exercise our discretion and decline to award attorney's fees under these circumstances.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's imposition of sanctions against Plaintiff's attorneys, vacate the award of attorney's fees, and remand for further proceedings consistent with this opinion. We decline to award Defendants their attorney's fees on appeal. The matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellants, Brian Manookian and Afsoon Hagh, for which execution may issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE