IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 20, 2024 Session

**BRITTANY SHARAYAH LEHMANN v. JERRY SCOTT WILSON**

**Appeal from the Juvenile Court for Rutherford County**
**No. JS-14093          Travis Macon Lampley, Judge**

_____

**No. M2023-01529-COA-R3-JV**
_____

This appeal concerns custody and child support determinations regarding a minor child. Because the trial court failed to identify and employ the applicable legal standard, we vacate the judgment as to the limitation of Father's parenting time, the imposition of supervised parenting time, and the suspension of Father's parental rights. Additionally, we vacate the award of attorney's fees to Mother because the trial court failed to determine their reasonableness. The judgment is otherwise affirmed as to the remaining issues and the case is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Vacated in Part and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Wesley Clark, Nashville, Tennessee, for the appellant, Jerry Scott Wilson.

L. Jeffery Payne and Laurie Y. Young, Murfreesboro, Tennessee, for the appellee, Brittany Sharayah Lehmann.

**MEMORANDUM OPINION[1]**

**BACKGROUND AND PROCEDURAL HISTORY**

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The minor child at issue ("Child") was born to appellant father ("Father") and appellee mother ("Mother") in June 2020. Mother and Father never married, and though Mother lived with Father from approximately September 2020 until May 2021. Mother also owned a separate residence.

After the parties separated, Mother filed a petition to establish parentage and a parenting plan and set child support in the Rutherford County Juvenile Court, which directed its appointed magistrate ("Magistrate") to hear the case. Thereafter, Father filed a motion to set a temporary parenting plan, in which he also agreed that he was Child's biological father. Thereafter, the parties entered an agreed order of paternity, establishing Father as the legal biological father of Child. Regarding the parenting plan for Child, Mother filed a proposed parenting plan requesting that Father be denied any days of parenting time. Father's proposed parenting plan advocated that Mother and Father share parenting time equally.

The Magistrate heard arguments and proof over several days, and on September 7, 2023, he issued an order providing, in pertinent part, that Mother would be the primary residential parent and that Father would have visitation on the first and third weekend of every month beginning at 6:00 P.M. on Friday until Sunday at 6:00 P.M. He reached this decision through analysis of the best interests factors, laid out in Tennessee Code Annotated section 36-6-106(a). In assessing these factors, the Magistrate highlighted Father's failure to take advantage of a portion of his previously permitted visitation, Mother's history as the primary caretaker, as well as several instances in which the Magistrate found Father had physically abused Mother. Accordingly, he also denied Father visitation on any holidays,[2] reasoning that such visitation would increase the likelihood of undesirable interactions between Mother and Father.

Additionally, the Magistrate restricted Father's parental rights in various ways, including suspending a number of parental rights delineated in Tennessee Code Annotated section 36-6-101. He further ordered that Father could only exercise overnight visitation if another adult relative was present. The Magistrate also ruled that while Father is engaging in visitation with Child, he will not consume any alcohol or illegal drugs and will take his medication as prescribed. Sole decision-making authority was awarded to Mother.

As to child support, the Magistrate's order determined that Father would pay Mother $2,100.00 per month. The Magistrate further concluded that Father owed Mother a net arrearage payment of $63,000.00, for which he was credited $12,291.74 for previous payments made to her. Father was ordered to pay an additional $900.00 in child support per month to pay down this arrearage.

---

[2] The Magistrate did permit Father visitation with Child over Christmas, but only if it fell within the visitation plan outlined in the order.

Lastly, the Magistrate granted Mother attorney's fees, pursuant to Tennessee Code Annotated section 36-6-236, "[b]ecause Mother has been successful[.]" The order provided that "Mother's attorney shall provide an affidavit of attorney's fees. The same shall be awarded so long as it is reasonable and a judgment will issue to that effect."

On September 20, 2023, Father filed a request for review by the juvenile court judge.[3] In this request, Father argued that the Magistrate failed to find the least restrictive visitation plan available, failed to engage in the appropriate analysis to support reducing Father's visitation time in such an extensive manner, failed to include findings to support restricting Father's parental rights, failed to make appropriate findings to support vesting Mother with sole decision-making authority, and failed to make appropriate findings to support placing a limitation on Father's alcohol consumption. Furthermore, Father alleged that the Magistrate awarded Mother attorney's fees pursuant to an inapplicable statute. Additionally, Father claimed that the court made incorrect findings associated with the calculation of the child support owed in arrearage.

---

[3] Tennessee Code Annotated section 37-1-107 permits the judge of the juvenile court to appoint a magistrate to hear any case or class of cases, during which the magistrate operates with the authority of a judge. Tenn. Code Ann. § 37-1-107. Previously, a party subject to an order entered by the magistrate was entitled to a de novo hearing from the judge of the juvenile court, if timely requested. As amended effective April 25, 2023, however, the juvenile court judge may elect to review the magistrate's order upon the record, without a new hearing:

(d)(1)(A) party may, within ten (10) days of entry of the magistrate's order, file with the court a written request for a review of the record by the juvenile court judge. The request must include written exceptions to the magistrate's findings, conclusions, or recommendations, and specify the findings to which the party objects, the grounds for the objection, and the party's proposed findings, conclusions, or recommendations.

. . . .

(C) **A review by the juvenile court judge is not a hearing and is limited to those matters for which exceptions have been filed.**

(D) The juvenile court judge shall afford the magistrate's findings, conclusions, and recommendations a presumption of correctness. The judge shall modify the magistrate's findings only when, after review, the judge makes a written finding that an abuse of discretion exists in any or all of the magistrate's findings, conclusions, or recommendations.

(E) **The judge shall issue written findings, conclusions, or recommendations, or may schedule the matter for a new hearing of any issues the judge deems necessary, with notice to all parties.**

Tenn. Code Ann. § 37-1-107(d)(1) (emphasis added).

Before the juvenile court judge ("the Judge") entered a ruling on Father's request for judicial review, Mother's attorney filed an affidavit of attorney's fees, which reflected a total of $50,999.50 in fees. On October 9, 2023, the Magistrate entered an order requiring Father to pay the totality of the fees requested; however, the order did not discuss the reasonableness of such fees or find the same.

On October 10, 2023, the Judge, solely on the record and without further hearing, broadly affirmed the rulings made by the Magistrate, only slightly modifying the award of attorney's fees to Mother. In support of his ruling, the Judge noted that the record demonstrated that Mother had "performed the great majority of parenting responsibilities" and that Father had a history of failing to exercise his parenting time. He also concluded that the record supported Mother's allegations of Father's violent behavior. In consideration of these findings, the Judge determined that the Magistrate did not abuse his discretion in constructing a parenting plan with limited visitation afforded to Father. Additionally, the Judge determined that a heightened analysis of Father's restricted parenting time was not required because the Magistrate did not completely restrain Father from engaging in parenting time.

As to the restriction of Father's parental rights, the Judge noted that Tennessee Code Annotated section 36-6-101(a)(3)(B) states that, in custody cases other than those stemming from divorce or annulment, the parental bill of rights "may" be included in the judgment. Accordingly, he concluded that the Magistrate did not abuse his discretion in partially suspending Father's parental rights.

In affirming the decision to vest sole decision-making authority with Mother, the Judge emphasized evidence reflecting Father's lack of parenting history, his abusive nature toward Mother, his refusal to clearly answer whether he had moved out of Tennessee or if he planned to live in Florida, and the lack of emotional ties between Father and Child.

As to the issue of attorney's fees, the Judge agreed with Father's contention that the Magistrate improperly granted attorney's fees to Mother by reference to Tennessee Code Annotated section 36-6-236, which addresses issues with respect to the Uniform Child Custody Jurisdiction and Enforcement Act. The Judge further agreed with Father that Tennessee Code Annotated section 36-5-103(c) is the appropriate statute for awarding attorney's fees in this matter. Nevertheless, the Judge disagreed with Father's contention that Mother is not the "prevailing party" in this case and therefore may not recover. Although the Judge acknowledged that Mother did not prevail in her proposal to maintain 365 days of parenting time per year, he noted that Mother prevailed on a number of significant issues throughout the litigation. As such, the Judge concluded that Mother was properly considered the "prevailing party" and may therefore be awarded attorney's fees.

Lastly, the Judge found that, "as it pertains to the matter for which [Father] has filed exceptions, the Court finds that [the Magistrate's] findings, conclusions, and

- 4 -

recommendations are accurate and appropriate[,]" concluding that the Magistrate did not abuse his discretion.

This appeal followed.

## ISSUES PRESENTED

In his appellate brief, Father presents several issues for this Court's review, which we have restated as follows:

1. Whether the trial court abused its discretion regarding parenting time, supervision, decision-making authority, and restricting Father's parental rights.
2. Whether the award of retroactive child support is based on a clearly erroneous view of the evidence.
3. Whether the award of attorney's fees constitutes an abuse of discretion.
4. Whether Father should be awarded attorney's fees on appeal.

In her appellate brief, Mother presents the following additional issue for this Court's review, restated verbatim:

Whether Mother should be awarded attorney's fees on appeal.

## STANDARD OF REVIEW

We review decisions regarding parenting time and parental responsibilities under the abuse of discretion standard. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013) Regarding this standard, the Tennessee Supreme Court has stated:

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn.Ct.App.1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey–Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn.Ct.App.2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn.1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn.Ct.App.1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details

of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id*. "An abuse of discretion occurs when the trial court ... appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn.2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Id.* at 693 (alterations in original). Likewise, we review decisions regarding child support and attorney's fees under the abuse of discretion standard. *Estes v. Estes*, No. M2010-01243-COA-R3-CV, 2012 WL 1357550, at *8, 10 (Tenn. Ct. App. Apr. 16, 2012).

## DISCUSSION

We first consider the decision to vest sole decision-making authority with Mother. Tennessee Code Annotated section 36-6-407 ("section 36-6-407") describes how a court may allocate decision-making authority between parents, stating in pertinent part:

(c) Except as provided in subsections (a) and (b), the court shall consider the following criteria in allocating decision-making authority:

(1) The existence of a limitation under § 36-6-406;

(2) The history of participation of each parent in decision making in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and whether each parent attended a court-ordered parent education seminar;

(3) Whether the parents have demonstrated the ability and desire to cooperate with one another in decision making regarding the child in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and

(4) The parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

Tenn. Code Ann. § 36-6-407(c).

Here, the Magistrate vested sole decision-making authority with Mother, stating that "Mother shall have exclusive decision-making authority regarding educational decisions,

- 6 -

non-emergency health care, religious upbringing, and [extra]curricular activities." Although the Magistrate's order failed to reference section 36-6-407, the judicial review order quoted the above statutory language and concluded that the "record indicates that father has engaged in a pattern of physical abuse of the mother, the mother has performed the majority of the parenting responsibilities, . . . and father was evasive with the Court on whether he lived/worked in Miami, Florida and/or Rutherford County, Tennessee." The Judge concluded that such factors supported the Magistrate's decision to grant Mother sole decision-making authority.

We observe that the judicial review order identifies the applicable law, and we are of the opinion that the record supports the corresponding findings. Accordingly, we conclude that the award of sole decision-making authority to Mother was not in error.

We next assess the limitation of Father's Bill of Rights. A parent's Bill of Rights, as it is commonly known, is delineated in Tennessee Code Annotated section 36-6-101(a)(3). The statute describes the rights as well as the circumstances in which a parent shall be afforded such rights:

> Except when the court finds it not to be in the best interests of the affected child, each order pertaining to the custody or possession of a child arising from an action for absolute divorce, divorce from bed and board or annulment **shall grant** to each parent the rights listed in subdivisions (a)(3)(B)(i)-(vi) during periods when the child is not in that parent's possession or shall incorporate such rights by reference to a prior order. Other orders pertaining to custody or possession of a child **may contain** the rights listed in subdivisions (a)(3)(B)(i)-(vi).
>
> (B) The referenced rights are as follows:
>
> (i) The right to unimpeded telephone or, if available, video conference conversations with the child at least twice a week at reasonable times and for reasonable durations. The parent exercising parenting time shall furnish the other parent with a telephone number or, if available, video conferencing information where the child may be reached at the days and time specified in a parenting plan or other court order or, where days and times are not specified, at reasonable times;
>
> (ii) The right to send mail to the child which the other parent shall not destroy, deface, open or censor. The parent exercising parenting time shall deliver all letters, packages and other material sent to the child by the other parent as soon as received and shall not interfere with their delivery in any way, unless otherwise provided by law or court order;
> (iii) The right to receive notice and relevant information as soon as

practicable but within twenty-four (24) hours of any hospitalization, major illness or injury, or death of the child. The parent exercising parenting time when such event occurs shall notify the other parent of the event and shall provide all relevant healthcare providers with the contact information for the other parent;

(iv) The right to receive directly from the child's school any educational records customarily made available to parents. Upon request from one (1) parent, the parent enrolling the child in school shall provide to the other parent as soon as available each academic year the name, address, telephone number and other contact information for the school. In the case of children who are being homeschooled, the parent providing the homeschooling shall advise the other parent of this fact along with the contact information of any sponsoring entity or other entity involved in the child's education, including access to any individual student records or grades available online. The school or homeschooling entity shall be responsible, upon request, to provide to each parent records customarily made available to parents. The school may require a written request which includes a current mailing address and may further require payment of the reasonable costs of duplicating such records. These records include copies of the child's report cards, attendance records, names of teachers, class schedules, and standardized test scores;

(v) Unless otherwise provided by law, the right to receive copies of the child's medical, health or other treatment records directly from the treating physician or healthcare provider. Upon request from one (1) parent, the parent who has arranged for such treatment or health care shall provide to the other parent the name, address, telephone number and other contact information of the physician or healthcare provider. The keeper of the records may require a written request including a current mailing address and may further require payment of the reasonable costs of duplicating such records. No person who receives the mailing address of a requesting parent as a result of this requirement shall provide such address to the other parent or a third person;

(vi) The right to be free of unwarranted derogatory remarks made about such parent or such parent's family by the other parent to or in the presence of the child;

(vii) The right to be given at least forty-eight (48) hours' notice, whenever possible, of all extracurricular school, athletic, church activities and other activities as to which parental participation or observation would be appropriate, and the opportunity to participate in

or observe them. The parent who has enrolled the child in each such activity shall advise the other parent of the activity and provide contact information for the person responsible for its scheduling so that the other parent may make arrangements to participate or observe whenever possible, unless otherwise provided by law or court order;

(viii) The right to receive from the other parent, in the event the other parent leaves the state with the minor child or children for more than forty-eight (48) hours, an itinerary which shall include the planned dates of departure and return, the intended destinations and mode of travel and telephone numbers. The parent traveling with the child or children shall provide this information to the other parent so as to give that parent reasonable notice; and

(ix) The right to access and participation in the child's education on the same basis that are provided to all parents including the right of access to the child during lunch and other school activities; provided, that the participation or access is legal and reasonable; however, access must not interfere with the school's day-to-day operations or with the child's educational schedule.

Tenn. Code Ann. § 36-6-101(a)(3) (emphasis added).

Here, we observe that both parties filed an agreed order establishing Father's parentage and stating that both parties are "entitled to the following parental rights set forth in TCA § 36-6-101[.]" However, the Magistrate suspended several parental rights in the subsequent child support and custody judgment, noting that the rights in the parental bill of rights

are suspended as to Father with the exception of the following rights: Father is entitled to know if the child has a medical emergency (for example, a broken arm requiring an emergency room visit) within twelve (12) hours. Additionally, Father has a right to know the child's educational progress once the child begins school. Father shall have access to the child's report cards and has the right to know how the child is doing in school.

However, the judgment failed to discuss how the elimination of the other parental rights was in the best interests of Child. Father excepted to the omission of this discussion in his petition for judicial review, arguing that such a discussion was necessary.

In the judicial review order, the Judge highlighted that this custody determination did not arise "from an action for absolute divorce, divorce from bed and board or annulment" because Mother and Father were never married. *Id.* Furthermore, the Judge

emphasized that "other orders pertaining to custody or possession of a child *may* contain the rights listed in subdivision (a)(3)(B)(i)-(iv)[,]" concluding that the Magistrate was within his discretion to suspend Father's parental rights. However, we observe that Tennessee Code Annotated section 36-6-110 provides the following:

> Except when the juvenile court or other appropriate court finds it not in the best interests of the affected child, upon petition by a noncustodial, biological parent whose parental rights have not been terminated, the court shall grant the rights set forth in § 36-6-101(a)(3)(A).

Tenn. Code Ann. § 36-6-110.

From our review of the record, Father petitioned for those rights pursuant to the agreed order entered by both parties and ultimately signed by the Magistrate. Because neither the Magistrate's order nor the judicial review order explain why it was in Child's best interests for any of Father's parental rights to be suspended, we conclude that the suspension of Father's rights should be vacated, and upon remand, the court should consider whether such a suspension is in Child's best interests.

In connection with our remand of this case, the limitation of Father's parenting time and other associated restrictions should also be reconsidered. "The Child Support Guidelines . . . presume that children will typically reside with the alternate residential parent a minimum of eighty (80) days per year." *In re Grace N.*, No. M2014-00803-COA-R3-JV, 2015 WL 2358630, at *5 (Tenn. Ct. App. May 14, 2015) (citing Tenn. Comp. R. & Regs. 1240–02–04–.04(7)(a)). Although here the trial court limited Father's parenting time to 48 days a year and restricted it by requiring overnight visitation to be supervised, the analysis accompanying these determinations lacked sufficient discussion of the relevant legal authority. *See Armbrister*, 414 S.W.3d at 696 (holding that a court must determine if a finding under Tennessee Code Annotated section 36-6-406 necessitates the limitation of parenting time); *Carr v. Carr*, No. M2017-00556-COA-R3-CV, 2018 WL 1137109, at *6-7 (Tenn. Ct. App. Mar. 1, 2018) (requiring a discussion of Tennessee Code Annotated section 36-6-406 if a trial court makes findings typically associated with section 36-6-406); *see also* Tenn. Code Ann. § 36-6-301 (providing the relevant analysis supporting the imposition of supervised parenting time). Upon remand of this case, the court should consider the limitation of Father's parenting time and the imposition of supervised parenting time in association with its respective applicable legal authority.[4]

We next assess whether the Magistrate correctly calculated the amount of Father's retroactive child support. On appeal, Father posits two different errors with this calculation.

---

[4] It is not this Court's intention to express general disapproval of the parenting schedule or supervision or limitation of Father's rights, but as stated in this Opinion, such limitations must be couched—if they are to be supportable—in a discussion of the applicable legal authority.

He first argues that the Magistrate incorrectly calculated the period in which Mother and Child cohabitated with Father, and he additionally contends that he was incorrectly credited for his previous support payments made to Mother.

As to the first issue, Mother's and Father's testimony differed considerably as to when the cohabitation ended. The Magistrate made a credibility determination in favor of Mother's testimony. As previously discussed by our Tennessee Supreme Court, we give great deference to a trial court's credibility findings. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (citing *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn Ct. App. 1991)). Here, based on our review of the transcript of proceedings in the record, we agree with the Magistrate's finding that Father was evasive during his testimony. Under these circumstances, we conclude that the record supports the Magistrate's credibility determination in favor of Mother's testimony,[5] and to that end, his determination as to how long the parties cohabitated.

As to Father's argument concerning his previous payments to Mother, he asserts that the Magistrate failed to credit him for several alleged payments against the total amount of child support owed in arrearage. However, Father does not provide this Court with a specific dollar amount in lieu of the Magistrate's calculation; rather, he simply asserts that the calculation was wrong, citing to certain instances of testimony in support of his assertion. Upon our review of the record, it appears that the cited testimony concerns potential past payments, but it is vague as to when these payments occurred or how much these payments totaled. Conversely, the Magistrate's calculated amount is drawn from an exhibit introduced by Father, which contains a history of dated checks made to Mother. Because the Magistrate's calculation is based upon clear evidence and Father is unable to produce any countervailing evidence, or even specifically argue what amount of a credit should have been held to be the correct one, we conclude the Magistrate did not err in calculating Father's retroactive child support obligation.

We next assess whether the Magistrate's award of attorney's fees to Mother was in error. Among other issues,[6] Father alleges that there was no analysis of the reasonableness of Mother's attorney's fees. We note that Mother, in her appellate brief, agrees with Father that the Magistrate failed to assess the reasonableness of the fees.

Here, the trial court granted Mother's attorney's fees pursuant to Tennessee Code Annotated section 36-5-103(c), which states,

---

[5] Inasmuch as Father otherwise challenges the credibility assessments underlying the Magistrate's preliminary findings, we similarly conclude that the record supports those findings.

[6] Father also argues that the court erred in determining that Mother was the "prevailing party" and therefore eligible to receive an award of attorney's fees. Tenn Code Ann. § 36-5-103. However, due to our disposition herein, several issues require further proceedings upon remand, and therefore, the issue of attorney's fees must necessarily be revisited by the court. As such, this issue is pretermitted.

A prevailing party may recover **reasonable** attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c) (emphasis added).

"In determining a reasonable fee, trial courts consider a number of factors, including those listed in Rule 1.5 of the Tennessee Rules of Professional Conduct." *Buckley v. Carlock*, 652 S.W.3d 432, 445 (Tenn. Ct. App. 2022) (citing *Lexon Ins. Co. v. Windhaven Shores, Inc.*, 601 S.W.3d 332, 342 (Tenn. Ct. App. 2019)); *see* Tenn. Sup. Ct. R. 8, RPC 1.5. Here, it is undisputed that the Magistrate failed to consider the factors in Rule 1.5 of the Tennessee Rules of Professional Conduct, and moreover, both Mother and Father agreed in their appellate briefs that the trial court failed to consider the reasonableness of the fees whatsoever. In light of this omission, we conclude that the Magistrate abused his discretion by awarding Mother her attorney's fees without assessing their reasonableness.

Lastly, Mother and Father have requested an award of attorney's fees incurred in this appeal. "An award of fees on appeal is discretionary, and we must consider a number of factors, including success on appeal, the financial condition of the parties, and whether the appeal was taken in good faith." *Salas v. Rosdeutscher*, No. M2021-00449-COA-R3-CV, 2024 WL 1119818, at *1 (Tenn. Ct. App. Jan. 9, 2024) (citing *Cooley v. Cooley*, 543 S.W.3d 674, 688 (Tenn. Ct. App. 2016)). In the exercise of our discretion, and under the circumstances of this appeal, we decline to award attorney's fees to either party.

## CONCLUSION

For the foregoing reasons, the judgment is vacated as to the rulings concerning parenting time, the imposition of supervised parenting time, the suspension of Father's parental rights, and the award of attorney's fees to Mother. The judgment is otherwise affirmed, and the case is remanded to the trial court for further proceedings consistent with this Opinion. In the exercise of our discretion, neither party is awarded attorney's fees incurred in this appeal.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE
